**In the Matter of the ADOPTION OF J.N.F.**

**Appeal of: W.E.**

Superior Court of Pennsylvania.

Argued Aug. 30, 2005.
Filed Nov. 9, 2005.

Mary A. Richmond, Erie, for appellant.

Catherine A. Allgeier, Erie, for Erie County Office of Children and Youth, appellee.

BEFORE: LALLY–GREEN, POPOVICH and JOHNSON, JJ.

OPINION BY POPOVICH, J.:

¶ 1 W.E. (Father) appeals the order entered on October 4, 2004, in the Court of Common Pleas of Erie County, that involuntarily terminated his parental rights in J.N.F., his minor child. On review, we affirm.

¶ 2 The relevant facts and procedural history of this case are as follows: J.N.F. was born on September 5, 2002, to L.F. (Mother) and Father. Mother and Father are not married, and, at the time of J.N.F.'s birth, Father's paternity of J.N.F. had not been established. However, Mother indicated that Father was, in fact, J.N.F.'s biological father. Based on the history of difficulties Mother had with parenting, including her drug abuse, frequent incarceration, and her inability to care for her other children, the Erie County Office of Children and Youth (OCY) initiated dependency proceedings on behalf of J.N.F. Shortly thereafter, J.N.F. was adjudicated dependent. On September 7, 2002, on discharge from the hospital, J.N.F. was placed in foster care.

¶ 3 The trial court conducted an adjudication hearing on September 20, 2002. Mother stipulated to the facts set forth in OCY's petition, and the trial court declared J.N.F. dependent. On October 4, 2002, after declaring J.N.F. dependent, the trial court established J.N.F.'s permanency goal as reunification with Mother. In addition, the October 4, 2002 order established a child service plan that required Mother to achieve certain objectives so that she could be reunified with J.N.F.

¶ 4 Although named as the natural father of J.N.F. by Mother, Father's paternity was not established formally at the time of the adjudication hearing, and his whereabouts were unknown at that time. Therefore, the trial court's October 4, 2002 order provided for genetic testing and the development of a child service plan once Father's paternity of J.N.F. was established.

¶ 5 Father's paternity of J.N.F. was established conclusively on April 29, 2003, shortly before his parole from prison. The child service plan required Father, while on parole, to comply with the terms of his parole re-integration program and take parenting classes. The record indicates that Father was partially compliant with these programs while on parole. Father also engaged in several supervised and unsupervised visits with J.N.F. However, on October 8, 2003, Father was arrested for a parole violation and incarcerated at the State Correctional Institution at Albion (SCI–Albion). After being incarcerated, Father corresponded with J.N.F. by letter on February 11, 2004, March 29, 2004, June 24, 2004, August 30, 2004, and September 14, 2004.

¶ 6 Despite the services offered to Mother and Father, OCY did not feel that Mother or Father made adequate progress toward the goal of reunification. Therefore, OCY filed a petition with the trial court to change J.N.F.'s goal from reunification with Mother to adoption. Father

was represented by appointed counsel at the goal-change hearing. The trial court granted OCY's petition on February 25, 2004. Father and Mother did not appeal the order to this Court. On June 3, 2004, OCY filed a petition to terminate Mother's parental rights involuntarily in J.N.F. OCY filed a petition to terminate Father's parental rights involuntarily in J.N.F. on June 4, 2004. The petitions informed Mother and Father that if they desired counsel and were indigent, the trial court would appoint counsel to represent them at no cost. Father received notice of OCY's petition while incarcerated, and he told his OCY caseworker that he wished to contest the petition. However, Father did not request the trial court to appoint counsel for his petition, and he did not inform the trial court of his intent to contest the petition.

¶ 7 Consistent with the standard practice in Erie County, the trial court conducted a "right to amend" proceeding on the termination petition on July 12, 2004. The purpose of this hearing is to determine whether the petition will be contested, to appoint counsel for the parents and children if the petition is contested, and to schedule a hearing date. Father was not present at this hearing, and he was not represented by counsel at the hearing. At the hearing, OCY's attorney informed the trial court that Father wished to contest the termination petition, but Father had not indicated to the trial court, via motion or other communication, that he wished to contest the termination petition.

¶ 8 On July 29, 2004, following the "right to amend" hearing, the trial court appointed Karen Klapsinos, Esquire, to represent J.N.F. The trial court did not appoint counsel to represent Mother or Father, and its July 29, 2004 order advised Mother and Father that they must either retain private counsel or represent themselves at the termination hearing. The trial court's July 29, 2004 order also scheduled the termination hearing to take place on September 28, 2004. Thereafter, on September 9, 2004, OCY filed an amended termination petition. Although he received notice of OCY's original termination petition, Father did not receive notice of the amended petition.

¶ 9 The termination hearing took place as scheduled on September 28, 2004. Father was not present at the hearing, and he was not represented by counsel at the hearing.[1] However, immediately before the hearing commenced, OCY informed the trial court that, as of the date of the "right to amend" hearing, Father wanted to contest the termination petition. Thereafter, the trial court received testimony from two OCY caseworkers involved with J.N.F.'s case. On October 4, 2004, the trial court granted OCY's petition and terminated Mother's and Father's parental rights in J.N.F. The trial court authored an opinion in support of its order.

¶ 10 On November 1, 2004, Father filed pro se a "notice of intent" to challenge the trial court's termination order.[2] Father's "notice of intent" also contained a motion for request of appointment of counsel to assist him with his appeal. The trial court treated Father's "notice of intent" as a notice of appeal, but it did not rule on

1. Mother was not present at the hearing, and she was not represented by counsel at the hearing.

2. The envelope attached to Father's "notice of intent" contained in the certified record indicates that Father mailed the "notice of intent" on November 1, 2004. As Father was incarcerated at the time the "notice of intent" was mailed, the "prisoner mailbox rule" holds that the "notice of intent" was filed on November 1, 2004. See Thomas v. Elash, 781 A.2d 170 (Pa.Super.2001).

Father's request for counsel. On November 16, 2004, the trial court ordered Appellant to file a concise statement of matters complained of on appeal pursuant to Pa. R.A.P. 1925(b). The docket entries reflect that Father filed *pro se* a concise statement of matters complained of on appeal that was returned to him by the trial court. However, the *pro se* statement of matters does not appear in the certified record. Thereafter, on February 16, 2005, the trial court authored a supplemental opinion that stated that Father failed to comply with its Pa.R.A.P. 1925(b) order and that it would rely on its previous opinion of October 4, 2004, as support for its termination order.

¶ 11 On February 17, 2005, the trial court appointed Mary A. Richmond, Esquire, as counsel to assist Father with the prosecution of his appeal. Thereafter, on February 25, 2005, this Court returned the record to the trial court because Father failed to pay the appropriate filing fee for his notice of appeal. We directed the trial court to return the record to this Court after Father paid the appropriate filing fee or was granted *in forma pauperis* status from the trial court.

¶ 12 Father, through Attorney Richmond, filed a petition for permission to file an amended notice of appeal and amended Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal on March 4, 2005. With the petition, Father filed a request for *in forma pauperis* status. The trial court granted this petition, and Father filed the amended notice of appeal on March 4, 2005. On that same day, the trial court granted Father *in forma pauperis* status. On May 9, 2005, after receipt of the termination hearing transcripts, Father filed a Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal *nunc pro tunc*. Thereafter, on May 16, 2005, the trial court authored a supplemental opinion that addressed the issues presented in Father's Pa.R.A.P. 1925(b) concise statement.

¶ 13 Father presents the following issues for our review:

A. Whether the trial court erred in not appointing counsel for [Father] in accordance with 23 Pa.C.S.A. § 2313(A.1) as the trial court was advised by [OCY] that he was indigent, incarcerated, and [was contesting] the termination of his parental rights[?]

B. Whether the trial court erred in not requiring [OCY] and/or court administrator and/or prison authorities to transport [Father] from his place of confinement in the same county to the courthouse to enable him to participate in the hearing[?]

C. Whether the trial court erred in not providing any alternative procedure for [Father] to attend and participate in the involuntary termination proceeding by stand-by counsel, speaker-phone, video-conference, or other method[?]

D. Whether the trial court erred in involuntarily terminating [Father's] parental rights when [OCY] failed to serve the amended petition for involuntary termination of parental rights on [Father] as required by the Pennsylvania Adoption Act and the Rules of Civil Procedure[?]

Father's brief, at 4.

¶ 14 In *In re Baby Boy P.*, 333 Pa.Super. 462, 482 A.2d 660 (1984), we summarized the scope and standard of review for appeals from termination orders in the following fashion:

An appellate court, in reviewing a termination order, must employ a broad, comprehensive review of the record, but is limited in its standard of review to a

determination of whether the trial court's termination of [Father's] parental rights is supported by competent evidence. Stated differently, unless the lower court has abused its discretion or committed an error of law, the order must stand. Furthermore, the burden of proof on the party seeking to terminate another's parental rights is one of clear and convincing evidence. In order to meet the clear and convincing burden of proof, [OCY] must instill in the mind of the court a firm belief or conviction.

*Baby Boy P.*, 482 A.2d at 661 (citations omitted).

¶ 15 Father asserts first that the trial court committed an abuse of discretion by failing to appoint counsel on his behalf to represent him throughout the termination proceedings. The essence of Father's argument is that because the trial court was aware of his indigent status and because he was incarcerated, the trial court should have appointed counsel on his behalf. We disagree with Father's argument.

¶ 16 The appointment of counsel for indigent parents in termination proceedings is controlled by 23 Pa.C.S.A. § 2313(a.1), which states, in pertinent part, the following:

(a.1) PARENT.—The court shall appoint counsel for a parent whose rights are subject to termination in an involuntary termination proceeding if, ***upon petition of the parent***, the court determines that the parent is unable to pay for counsel or if payment would result in substantial financial hardship.

(emphasis added).

¶ 17 In the present case, the original termination petition contained a notice that stated the following:

You have a right to be represented at the hearing by a lawyer; however, it is not necessary to have a lawyer at this hearing. A court-appointed attorney will be assigned to represent you if you cannot afford legal help. The Family/Orphans' Court Administrator will be present at this hearing. She will give you an application for request of a court-appointed attorney. This attorney will represent you at your [termination hearing]. If you have any questions, contact [the Family/Orphans' Court Administrator].

*See* Notice, 9/4/2004.

¶ 18 The above language was sufficient to communicate to Father the following: (1) if he could not afford an attorney, one would be provided to him upon his request; and (2) he was obliged to communicate with the Family/Orphans' Court Administrator to obtain a court-appointed attorney or to obtain the information necessary regarding the procedure for obtaining a court-appointed attorney. Father did not request a court-appointed attorney, and he did not attempt to communicate with the Family/Orphans' Court Administrator to determine the procedure to obtain a court-appointed attorney. As such, we are satisfied that Father did not petition the trial court for a court-appointed attorney. *See* 23 Pa.C.S.A. § 2313(a.1) (indigent parent must petition trial court for counsel in termination proceedings). Consequently, we are satisfied that the trial court did not abuse its discretion by not appointing counsel for Father. As such, Father's argument fails.

¶ 19 We consider Father's next two issues jointly. Father asserts that the trial court abused its discretion by failing to permit him to participate at the termination hearing. Specifically, Father contends that the trial court should have transported him from SCI–Albion to the

Erie County Courthouse to participate in person or that it should have permitted him to participate by an alternate method, such as a telephonic conference.

■■■ ¶ 20 It is well-settled that a trial court is *not* required to transport an incarcerated parent to a termination hearing in order to satisfy the needs of due process. *See In the Interest of A.P.*, 692 A.2d 240, 243 (Pa.Super.1997). However, if the incarcerated parent desires to contest the termination petition, the trial court must afford the incarcerated parent the ability to participate meaningfully in the termination hearing through alternate means. *Id.*, 692 A.2d at 243.

¶ 21 In its May 16, 2005 Pa.R.A.P. 1925(a) opinion, the trial court stated that it did not transport Father to the hearing or make alternate means available to him to participate at the hearing because Father "did not inform [the trial court] of his desire to participate [at the termination hearing]." The original termination petition's notice contained an advisory statement indicating that, if Father wished to contest the termination petition, he was required to contact the Family/Orphans' Court Administrator and inform her of his desire to contest the petition. *See* Notice, 9/4/2004. Father did not take this action. Instead, Father communicated to his OCY caseworker that he wished to contest the termination petition, and OCY's attorney relayed Father's statement to the trial court.

■■ ¶ 22 Clearly, courts in all jurisdictions possess an inherent power to create procedural rules to maximize the efficacy of the judicial process and to penalize parties who fail to abide by those rules. *See S. Med. Supply Co. v. Myers*, 804 A.2d 1252, 1258 (Pa.Super.2002). Here, Father failed to heed the notice set forth in the termination petition and to follow its directions regarding the procedure a parent

must take in the Court of Common Pleas of Erie County in order to contest involuntary termination of their parental rights. As a result, the trial court was without proper notice of Father's intent to contest the petition, and, therefore, it did not take steps to ensure Father's participation at the termination hearing. Father's act of informing OCY, his adversary, of his *intention* to contest the petition falls far short of *notifying* the trial court of his legal challenge to the termination petition. Accordingly, we are satisfied that the trial court did not err by failing to take steps to ensure Father's participation at the termination hearing. Therefore, Father's argument fails.

■■■ ¶ 23 Next, Father asserts that the trial court abused its discretion by involuntarily terminating his parental rights because OCY failed to serve its amended termination petition on Father while he was incarcerated. Due process requires nothing more than adequate notice, an opportunity to be heard, and the chance to defend oneself in an impartial tribunal having jurisdiction over the matter. *See Myers*, 804 A.2d at 1259. Clearly, the trial court's jurisdiction over the matter was invoked by the filing of OCY's original termination petition, which petition was served on Father. Therefore, Father cannot now complain that he did not have notice of OCY's intent to seek involuntary termination of his parental rights and that he was not provided an opportunity to defend himself at the termination hearing. Technically, OCY should have served the amended termination petition on Father to permit him an opportunity to respond to its specific allegations. However, inasmuch as we have already found that Father failed to take proper steps to challenge the termination proceedings, the failure of OCY to inform Father of the specific allegations it was averring

against him in the amended termination petition was irrelevant. Therefore, whatever error was occasioned by OCY's failure to serve the amended termination petition on Father was harmless. As such, Father's argument fails.

¶ 24 As Father's arguments fail, we affirm the trial court's termination order.

¶ 25 Order affirmed.