J-S54030-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE MATTER OF THE ADOPTION OF L.K. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.K., NATURAL FATHER | No. 397 WDA 2016 |

Appeal from the Decree February 18, 2016
In the Court of Common Pleas of Erie County
Orphans' Court at No(s): 60 in Adoption 2014

BEFORE:  BENDER, P.J.E., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                    **FILED AUGUST 15, 2016**

J.K. ("Father") appeals from the decree entered February 18, 2016, in the Court of Common Pleas of Erie County, which involuntarily terminated his parental rights to his minor daughter, L.K. ("Child"), born in November of 2010.[1]  After a careful review, we affirm.

This appeal arises from the petition for involuntary termination of parental rights filed by R.K.1 and R.K.2 ("Paternal Grandparents") on September 17, 2014.  The record reveals that Child has resided with Paternal Grandparents since approximately September 12, 2011.  **See** N.T.,

---

[1] Child's biological mother, C.K. ("Mother"), voluntarily relinquished her parental rights on November 4, 2015.  Mother has not filed a brief in connection with the instant appeal, nor has she filed her own separate appeal.

2/17/2016, at 7-9. Paternal Grandparents obtained custody of Child following a domestic violence incident during which Mother shot Father. *Id.* at 7. In addition, both parents were arrested after police discovered a marijuana-growing operation in the family's home. *Id.*

An involuntary termination hearing originally was scheduled for December 5, 2014, but the proceedings were continued on several occasions at the request of both Father and Mother. Father filed a petition to voluntarily relinquish his parental rights on November 13, 2015, but Father indicated at the relinquishment hearing that he felt as though he was being forced to give up his parental rights, and the matter was continued again. *See* N.T., 11/23/2015, at 3-4.

An involuntary termination hearing finally took place on February 17, 2016. However, the orphans' court was unable to reach Father on the phone.[2] After discussing the numerous prior continuances in this matter, the court announced that it would proceed with the hearing in Father's absence. N.T., 2/17/2016, at 3-4. Father's counsel asked whether the court would deny a request for an additional continuance, and the court replied, "Denied. Denied." *Id.* at 4-5. Following the hearing, on February 18, 2016, the court entered its decree involuntarily terminating Father's parental rights

---

[2] Father was incarcerated at the time of the hearing. It appears from the record that Father was released from incarceration following his arrest in 2011, and later was reincarcerated due to a different offense. *See* N.T., 2/17/2016, at 10-11.

to Child. Father timely filed a notice of appeal on March 14, 2016, along with a concise statement of errors complained of on appeal.

Father now raises the following issues for our review.

1. Whether the orphans' court committed an abuse of discretion and/or error or law by denying counsel's request for a continuance when [] Father was unavailable for participation by telephone by the prison system, after a request for telephone participation was duly scheduled[?]

2. Whether the constitutional rights of [Father], pursuant to the 14th Amendment to the U.S. Constitution, due process clause and guarantee of equal protection were violated when the [orphans'] court failed to afford [Father] the right to be heard, defend oneself and confront adverse witnesses[?]

3. Whether [] Father's rights under the Pennsylvania Constitution to due process and equal protection were violated by the failure of the [orphans'] court to continue the hearing so [] Father would have the opportunity to be heard and participate in the hearing to involuntarily terminate his parental rights[?]

Father's brief at 3 (unnecessary capitalization and orphans' court answers omitted).

Father's issues on appeal are interrelated, so we address them together. Father argues that the orphans' court violated his right to due process under both the United States and Pennsylvania Constitutions by failing to grant him an additional continuance on February 17, 2016.[3]

_____

[3] While Father asserts in his statement of questions involved that the orphans' court violated both his right to due process and his right to equal protection, the argument section of Father's brief focuses solely on his right to due process. Father does not develop any argument with respect to his right to equal protection, nor does he cite to any relevant authority. Thus, Father has waived any claim that the orphans' court violated his right to
*(Footnote Continued Next Page)*

Father's brief at 6-9. Father insists that he was unable to participate in the involuntary termination hearing due to a medical appointment, and that the court's decision prevented him from hearing the evidence presented against him, and from presenting evidence on his own behalf. *Id.* at 7.

We consider Father's claims mindful of our well-settled standard of review.

> This Court has noted that a trial court has broad discretion regarding whether a request for continuance should be granted, [and] we will not disturb its decision absent an apparent abuse of that discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result[ ] of partiality, prejudice, bias, or ill-will.

*In re K.J.*, 27 A.3d 236, 243 (Pa. 2011) (citations and quotation marks omitted).

"Procedural due process requires, at its core, adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case." *Garr v. Peters*, 773 A.2d 183, 191 (Pa. Super. 2001) (citation and quotation marks omitted). Due process does not require that an incarcerated parent must be physically

---

*(Footnote Continued)*

equal protection. *See In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011), *appeal denied*, 24 A.3d 364 (Pa. 2011) (quoting *In re A.C.*, 991 A.2d 884, 897 (Pa. Super. 2010)) ("'[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.'").

present at a termination hearing. *In re Adoption of J.N.F.*, 887 A.2d 775, 781 (Pa. Super. 2005). "However, if the incarcerated parent desires to contest the termination petition, the trial court must afford the incarcerated parent the ability to participate meaningfully in the termination hearing through alternate means." *Id.*

Instantly, in its opinion pursuant to Pa.R.A.P. 1925(a)(2)(ii), the orphans' court explained that Father was not entitled to an additional continuance. Orphans' Court Opinion, 4/6/2016, at 4-6. The court reasoned that the proceedings had already been continued on numerous occasions, and that Father's court-appointed counsel participated in the termination hearing even if Father himself did not. *Id.* The court stressed that Father had the opportunity to participate in the hearing if he chose to do so, and that Father's "unavailability because of a doctor appointment in prison appeared to be manufactured to further delay the trial." *Id.* at 3. We agree.

At the conclusion of the termination hearing, the orphans' court and Father's counsel engaged in the following discussion concerning their inability to reach Father on the phone.

> THE COURT: . . . . You apparently talked to him yesterday?
>
> [Father's counsel]: Well, I didn't speak to him. I spoke to his counselor.
>
> THE COURT: Were you given any indication at all that communicating with him would be a problem today?

[Father's counsel]: No. None.

THE COURT: Did anybody say anything to you about doctor appointments?

[Father's counsel]: No.

THE COURT: When is the last time you communicated or heard from your client, either speaking to him in person or writing?

[Father's counsel]: Okay. Well, I had written him a letter, January 25, 2016, advising him that I presented a motion with Your Honor requesting permission to participate in a hearing by telephone. Because he's at Camp Hill, he could not be transported here.

And I further advised him that if he had any evidence that he wished me to present, that he needed to get that to me. I received a letter from him from Camp Hill that was postmarked February 9, 2016, where he enclosed a copy of a speech that he wanted to give today. He requested that I assist him with making that happen when he had the opportunity to talk. And I have a speech.

THE COURT: Okay. I'll let you read it in, but that's-- that was the last time you heard from him?

[Father's counsel]: Well, then I attempted-- you know, I contacted Camp Hill a number of times, and I had great difficulty getting through to anyone who would call me back, and then finally was successful yesterday when I kind of went up the chain of command, because I said this hearing's tomorrow. I need to get this scheduled. I actually spoke to Mr. Phelps, and he advised me that 9:30 would be good, that he would have [Father] available, that he would only have a half an hour to talk, but indicated nothing as far as a doctor appointment.

THE COURT: All right.

[Father's counsel]: And I think he's the pod counselor.

THE COURT: All right. And the record should reflect he's the gentleman that we talked to on the phone this morning--

- 6 -

[Father's counsel]: Correct.

THE COURT: --and told us that when he arrived, that [Father] was already gone to the appointment, that he couldn't give us any indication how long he would be or when he might return. . . .

N.T., 2/17/2016, at 43-45.

Thus, the record confirms that Father had notice, the opportunity to be heard, and a chance to defend himself during the involuntary termination hearing on February 17, 2016. Father was aware that the hearing was scheduled for that day, and Father's counsel went to significant lengths in order to ensure that Father would be able to testify via telephone. However, Father forfeited his right to participate in the hearing by leaving for an unanticipated medical appointment without notifying the court, his attorney, or his prison counselor. While Father suggests that he had no choice but to attend the medical appointment that day, there is simply no support in the record for Father's claim.

Further, Father's counsel was able to participate meaningfully in the termination hearing despite Father's absence. Father's counsel cross-examined witnesses, and presented the court with several exhibits, including certificates indicating that Father had completed anger management, domestic violence, and dual diagnosis programs while incarcerated. ***See*** Father's Exhibits 2-3, 5-6. Father's counsel also presented the court with a "speech" prepared by Father, which the court reviewed prior to making its decision. Father's "speech" is contained in the certified record as Father's

Exhibit 1, and includes Father's explanation as to why he believes that his parental rights should not be terminated. ***Cf. In re Adoption of Dale A., II***, 683 A.2d 297, 300-01 (Pa. Super. 1996) (holding that the appellant father's right to due process was not violated, where he was represented by counsel during the termination hearing, and where his testimony was presented to the court using interrogatories and an affidavit).

Accordingly, because we conclude that the orphans' court did not deprive Father of his right to due process, we affirm the decree terminating Father's parental rights.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/15/2016