J-S25030-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN RE: ADOPTION OF K.H., A MINOR | : | IN THE SUPERIOR COURT OF |
| --- | --- | --- |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: G.H., NATURAL FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1807 WDA 2017 |

Appeal from the Order Entered September 5, 2017
In the Court of Common Pleas of Butler County
Orphans' Court at No(s):  O.A. 17 of 2017

BEFORE:  GANTMAN, P.J., PANELLA, J., and OTT, J.

MEMORANDUM BY PANELLA, J.                    **FILED JUNE 11, 2018**

G.H. ("Father")—a registered sex offender—appeals the order entered September 5, 2017, in the Court of Common Pleas of Butler County, which involuntarily terminated his parental rights to his daughter, K.H. ("Child") (born November 2007), pursuant to 23 Pa.C.S.A. § 2511(a)(5), (11), and (b) of the Adoption Act, 23 Pa.C.S.A. §§ 2101–2938. We affirm.

We summarize the relevant factual and procedural history of this matter as follows. The orphans' court adjudicated Child dependent in January 2016. Shortly before that adjudication, Child's female half-sibling made allegations against Father that he had sexually abused her. Child then became known to the Butler County Children and Youth Agency ("Agency") and was removed from the parental home when Child's birth mother, P.H. ("Mother"), left Child with an inappropriate caregiver. On April 4, 2017, the Agency filed a petition for involuntary termination of Father's parental rights. The orphans' court

appointed Susan B. Lope, Esquire, as "Counsel or Guardian Ad Litem" for Child. It is apparent from the record that Attorney Lope acted as Child's legal counsel and not as her guardian ad litem.[1]

Ultimately, the orphans' court held a hearing on the Agency's petition for involuntary termination of Father's parental rights.[2] At the hearing, Father was incarcerated because of his guilty pleas to statutory sexual assault and involuntary deviate sexual intercourse. Father did not appear at the hearing and did not request the appointment of counsel prior to the hearing. At the hearing, Attorney David Montgomery represented the Agency. Attorney Lope

_____

[1] Although the order does not indicate whether Attorney Lope is to act as counsel or as guardian *ad litem*, the following discussion at the hearing makes it apparent that Attorney Lope acted as counsel for Child:

> THE COURT: Ms. Lope, as counsel for Child, do you have anything you want to put on the record today?
>
> MS. LOPE: I don't. I support termination, both the confirmation of Mom and termination of Dad's rights under the current circumstances.

N.T., Termination Hearing, 8/4/17, at 19.

Further, on appeal, Attorney Lope, as counsel for Child, filed a joint brief for appellees with the Agency.

[2] Mother executed an adoption consent prior to the hearing. The orphans' court later conducted the hearing on the Agency's petition to confirm consent to adoption. The record indicates that the orphans' court "would be accepting and adopting the consent," but would "hold that and take that under advisement until we have concluded with [Father's] portion of the case." N.T., Termination Hearing, 8/4/17, at 9. The outcome of the petition to confirm consent to adoption is not apparent from the certified record.

attended the hearing as counsel for Child. The Agency called one witness, caseworker Tiffany Crotzer. The orphans' court terminated the parental rights of Father to Child.

On October 11, 2017, the clerk of orphans' court received a notice of appeal mailed by Father as well as a motion for appointment of counsel. The orphans' court then issued an order requiring Father to provide proof of the date he deposited his notice of appeal in the prison mail system. In response, Father provided a cash slip indicating he placed his notice of appeal into the prison mail system on October 6, 2017. The orphans' court determined that the order terminating Father's rights was mailed to him on September 8, 2017, and that the notice of appeal was deposited with prison officials on October 6, 2017. This timeline, which is supported by the record, renders Father's appeal timely pursuant to the "prisoner mailbox rule."

The orphans' court issued an order appointing counsel for Father and also ordered Father to file a concise statement of errors complained of on appeal. Father filed a timely *pro se* concise statement of errors complained of on appeal and counsel for Father also filed a concise statement of errors complained of on appeal raising additional matters, [3] which we will consider,

_____

[3] Father failed to file a concise statement of errors complained of on appeal with his notice of appeal. ***See*** Pa.R.A.P. 905. As neither the Agency nor Child assert prejudice from Father's failure to file a concise statement with his notice of appeal, and Father complied with the orphans' court's order to file a concise

as no party asserts prejudice from its untimely filing. ***See In re K.T.E.L.***, 983

A.2d 745, 747-748 (Pa. Super. 2009).

On appeal, Father raises the following issues:

1.  Whether the trial court committed an abuse of discretion and an error of law in proceeding with the hearing to terminate Appellant's parental rights to the Child without Appellant having the benefit of being represented by counsel, thereby violating his due process rights?

2.  Whether the trial court committed an error of law in finding that the moving party met their burden of proof pursuant 23 Pa.C.S.A. § 2511(a) and, based on that finding, erred in terminating Appellant's parental rights to the Child?

3. Whether the trial court erred when it failed to make findings of fact as to the nature and strength of the bond and relationship of the Child with the parents or guardian?

4. Whether the trial court erred when it failed to conduct an analysis of its findings pursuant to 23 Pa.C.S.A. § 2511(b) regarding the best interests of the Child, taking into primary consideration the developmental, physical, and emotional needs of the Child?

Father's Brief, at 10.

We review an appeal from the termination of parental rights with the

following standard:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are

_____

statement, we do not find his issues waived. ***See In re K.T.E.L.***, 983 A.2d 745, 747 (Pa. Super. 2009) (holding that there is no *per se* rule mandating quashal or dismissal of a defective notice of appeal in children's fast track cases).

supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

[T]here are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-827 (Pa. 2012) (internal citations omitted).

Father first contends the orphans' court deprived him of his constitutionally protected right to counsel during the termination of parental rights hearing. Father asserts "the record with the trial court is completely devoid of any documents indicating that [Father] received clear instructions on how to petition for counsel or that he had the right to have counsel represent him in the termination hearing if he could not afford to hire counsel privately." Father's Brief, at 23. Father also argues that his counsel in the dependency proceedings did not receive notice regarding the termination hearing although the orphans' court scheduled the termination hearing for the

same time as a goal change hearing involving Child. Accordingly, Father claims "It is clear," Father explains, that he "qualifies for court–appointed counsel and was denied the opportunity to have one appointed to him during the [termination] proceedings…. Therefore, [Father] is entitled to a new hearing on the matter with an opportunity to have counsel appointed to represent his interests." *Id*., at 28. We disagree.

The appointment of counsel for parents in involuntary termination proceedings is controlled by 23 Pa.C.S.A. § 2313, which provides, in pertinent part as follows:

> **(a.1) Parent.—**The court shall appoint counsel for a parent whose rights are subject to termination in an involuntary termination proceeding if, *upon petition of the parent*, the court determines that the parent is unable to pay for counsel or if payment would result in substantial financial hardship.

23 Pa.C.S.A. § 2313(a.1) (emphasis added).

It is a parent's sole responsibility to request an attorney. We have only required that a parent receive proper notice of the right to counsel before exercising that responsibility. That notice requires informing a parent if he cannot afford an attorney, one will be provided to him upon his request and must also provide instructions on how to obtain a court-appointed attorney. *See In re A.R.*, 125 A.3d 420, 422-423 (Pa. Super. 2015); *In re Adoption of J.N.F.*, 887 A.2d 775, 780 (Pa. Super. 2005).

Here, the orphans' court determined that the Agency personally served the petition for involuntary termination of parental rights notice upon Father

- 6 -

on May 19, 2017. The court also observed that the petition for involuntary termination of parental rights notice included the following language:

> A petition has been filed asking the court to put an end to all rights/duties you have to your child(ren): [Child.]
>
> The court has set a hearing to consider ending your rights/duties to your child(ren). That hearing will be held in courtroom [seven] located in the Butler County Courthouse/Government Center on the [fourth] day of August, 2017, at 9:00 o'clock. a.m.
>
> If you do not appear at this hearing, the court may decide that you are not interested in retaining your rights to your child(ren) and your failure to appear may affect the court's decision on whether to end your rights to your child(ren). You[] are warned that even if you fail to appear at the scheduled hearing, the hearing will go on without you and your rights to your child(ren) may be ended by the court without your being present. *You have a right to be represented at the hearing by a lawyer*. You should take this paper to your lawyer at once. *If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help*.

> Sarah Edwards, M.A., J.D.
> Register of Wills Clerk of Orphans' Court
> Government/Judicial Center
> Butler PA 16003-1208
> 724.284.5348

Orphans' Court Opinion, 12/28/17, at 4 (emphasis added).

Father did not request the appointment of counsel with regard to the termination petition prior to the termination hearing. Instead, Father first requested the appointment of counsel on October 11, 2017, well *after* the termination hearing. Once Father requested counsel, the orphans' court appointed counsel. Accordingly, the orphans' court determined that no violation of Father's due process rights occurred.

The language of the petition for involuntary termination of parental rights notice comports with proper notice requirements. *See In re A.R.*, 125 A.3d at 422-423; *In re Adoption of J.N.F.*, 887 A.2d at 780. The notice instructed Father who to contact if he did not have an attorney or could not afford one with respect to the petition for involuntary termination of parental rights. Although Father received clear instructions, he did not request court-appointed counsel. Based upon our review of the record, we conclude that the court's findings and conclusions are supported by the record and discern no abuse of discretion or error of law. We proceed to the merits of the termination of parental rights under § 2511(a) and (b) of the Adoption Act.

Termination of parental rights is governed by § 2511 of the Adoption Act. The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *See In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

We may affirm the trial court's decision regarding the termination of parental rights with regard to any *one* subsection of § 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). The orphans' court terminated the parental rights of Father to Child pursuant to § 2511(a)(5), (a)(11), and (b). We will focus our analysis on subsections (a)(11), and (b), which provide as follows.

> **(a)    General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

- 8 -

***

(11) The parent is required to register as a sexual offender under 42 Pa.C.S. Ch. 97 Subch. H (relating to registration of sexual offenders) or to register with a sexual offender registry in another jurisdiction or foreign country.

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

We begin with subsection (a). In terminating Father's parental rights under subsection (a)(11), the court stated:

Following the [a]djudication hearing, Father entered a guilty plea on August 29, 2016, on one charge of [s]tatutory [s]exual [a]ssault, 18 Pa.C.S.A. § 3122(a), and one count of [i]nvoluntary [d]eviate [s]exual [i]ntercourse, 18 Pa.C.S.A. § 3123(a)(7). On September 22, 2016, Father was sentenced to one to two years' imprisonment for the [s]tatutory [s]exual [a]ssault conviction to run concurrently with a sentence of three to six years' imprisonment for the [i]nvoluntary [d]eviate [s]exual [i]ntercourse conviction. Father was also sentence[d] to register as a lifetime sexually violent predator.

Orphans' Court's Findings of Fact and Order of Court, 9/1/17, at 1-2 (unnumbered).

Father acknowledges that he "pled guilty [to] one [count] of [s]tatutory [s]exual [a]ssault and one count of [i]nvoluntary [d]eviate [s]exual [i]ntercourse. He is currently incarcerated at the State Correctional Institute in Somerset, Pennsylvania." Father's Brief, at 11. At the termination hearing,

- 9 -

the Agency presented evidence that Father is a sexually violent predator with a lifetime registration requirement. **See** N.T., Termination Hearing, 8/4/17, at 10.

Required sex offender registration mandates termination of parental rights. Thus, we conclude that the orphans' court did not abuse its discretion in terminating Father's parental rights.

We proceed to review whether the requirements of subsection (b) are satisfied. **See In re Adoption of C.L.G.**, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*). The requisite analysis is as follows:

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

**In re Adoption of C.D.R.**, 111 A.3d 1212, 1219 (Pa. Super. 2015) (citations and quotation marks omitted; brackets in original).

"In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." ***In re K.Z.S.***, 946 A.2d 753, 762-763 (Pa. Super. 2008) (citation omitted). When evaluating a parental bond, "[t]he court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." ***In re Z.P.***, 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted).

As Father's third and fourth issues are related, we will address them together. Father asserts the court failed to make findings of fact or conduct an analysis as to the nature and strength of the bond and relationship of Child with Father, asserting that the orphans' court did not conduct an inquiry regarding any type of bond Child may have with Father. Father also maintains that the Agency did not present a bonding expert in the evidentiary hearing. Additionally, Father argues that the record is devoid of evidence regarding the effect that termination of Father's parental rights will have on Child and that the orphans' court's analysis is "cursory and unsupported." Father's Brief, at 33-34.

In addressing subsection (b), the court stated:

[T]he [o]rphans' [c]ourt found that Child was safe and bonded with the kinship family and that Child was included in family

- 11 -

activities, vacations, and holiday events. Orphans' Court Opinion, 9/1/2017, at 2. The kinship family also ensured that Child maintained relationships with [her] siblings. *Id*. Consequently, considering the quality of the relationship between the kinship family and Child together with the nature and underlying circumstances of Father's criminal convictions, it is clear that termination of Father's parental rights best serves the needs and welfare of Child.

Although the [o]rphans' [c]ourt noted that Father continued to send Child approximately one card or letter a month for six months while incarcerated, Father did not participate in any services or complete any programs while incarcerated. *Id*.

Orphans' Court Rule 1925(a)(2) Memorandum Opinion, 12/28/17, at 10-11.

Upon review, we again discern no abuse of discretion. At the hearing, Ms. Crotzer, the caseworker assigned to the matter involving Child, testified regarding her awareness of Father's incarceration and that a child permanency plan from January 2017 included Father's successful completion of a sex offender treatment program. *See* N.T., Termination Hearing, 8/4/17, at 12-13. Ms. Crotzer did not believe Father completed a sex offender treatment program, and Father did not return signed releases so Ms. Crotzer could obtain information regarding Father's completion of a sex offender treatment program. *See id*., at 13. Ms. Crotzer also had no information regarding Father completing any programs or services to promote and benefit his relationship with Child. *See id*. She testified that Father sent Child letters approximately once a month. *See id*., at 13, 17. Child responds by writing letters with her therapist. *See id*., at 17-18. Ms. Crotzer testified Child is doing very well in her foster home. *See id*., at 14. Child is loved in her placement home,

participates in Girl Scouts, goes to sporting events, and camp. ***See id***., at 14-15. And she is safe in her placement and has become part of the family. ***See id***., at 15-16.

Here, the record supports the orphans' court's finding that Child's developmental, physical and emotional needs and welfare favor termination of Father's parental rights pursuant to subsection (b). The record contains sufficient evidence to allow the orphans' court to make a determination of Child's needs and welfare, and as to the bond between Father and Child such that, if severed, it would not have a detrimental impact on Child. Contrary to Father's argument, there is no requirement for the orphans' court to utilize expert testimony regarding a bond to make this determination. ***See In re Z.P.***, 994 A.2d at 1121.

Order affirmed.

Judge Ott joins the memorandum.

President Judge Gantman concurs in the result.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/11/2018

- 13 -