J-S37031-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: I.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: E.D., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1495 EDA 2022 |

Appeal from the Order Entered May 17, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000195-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: I.I.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: E.D., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1496 EDA 2022 |

Appeal from the Decree Entered May 17, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000158-2022

BEFORE: BOWES, J., LAZARUS, J., and OLSON, J.

MEMORANDUM BY OLSON, J.: **FILED DECEMBER 20, 2022**

E.D. ("Mother") appeals from the May 17, 2022 decree granting the

petition filed by the Philadelphia Department of Human Services ("DHS") to

involuntarily terminate her parental rights to her daughter, I.D. a/k/a I.I.D

("Child"), born in November 2017.[1]  Mother also appeals from the May 17, 2022 order changing her permanency goal from reunification to adoption. After careful review, we affirm the termination decree and dismiss the appeal from the goal change order as moot.

The relevant facts and procedural history are as follows.  DHS first became aware of Mother when it received a General Protective Services ("GPS") report alleging that:  Child, who was one year old at the time, had been left home alone for an hour; Mother was experiencing suicidal ideations; and Mother struggled with abuse of phencyclidine ("PCP").  Trial Court Opinion, 7/12/2022, at 1; N.T., 5/17/2022, at 6-7.  Mother agreed to leave Child in the care of Child's maternal aunts, R.D. and D.D.  Trial Court Opinion, 7/12/2022, at 2.  However, on February 1, 2019, Mother removed Child from their home, and on the same day, DHS obtained an order of protective custody ("OPC") for Child and placed her with another maternal aunt, A.D. ("Maternal Aunt").  *Id.*  At a shelter care hearing on February 4, 2019, the trial court ordered legal custody of Child to DHS and ordered Child's temporary commitment to stand.

On February 8, 2019, DHS filed a dependency petition for Child.  On March 22, 2019, after an adjudicatory hearing, the trial court adjudicated Child

---

[1] According to the certified record, the putative father of Child is deceased. N.T., 5/17/2022, at 15.  On May 17, 2022, the trial court terminated the parental rights of any unknown father of Child.  No unknown father filed an appeal or participated in the instant appeals.

dependent. Subsequently, the trial court held permanency review hearings at regular intervals.

Community Umbrella Agency ("CUA") provided Mother with single case plan ("SCP") objectives. Mother's SCP objectives required that she: (1) comply with CUA services; (2) complete random drug screens; (3) participate in drug and alcohol treatment; (4) participate in parenting classes at Achieving Reunification Center ("ARC"); and (5) visit with Child. N.T., 5/17/2022, at 8. These objectives remained essentially the same throughout the duration of the case. *Id.* at 7.

Initially, Mother complied with her objectives and, in March 2021, the trial court ordered unsupervised overnight weekend visits. Permanency Review Order, 3/18/2021. However, in June 2021, Mother relapsed on PCP. *Id.* at 9. After relapsing, Mother failed to consistently produce negative random drug tests and was inconsistent in communicating with CUA. *Id.* at 9, 17. Additionally, in July 2021, due to Mother's relapse, the trial court changed Mother's visitation from unsupervised overnight weekend visits to supervised visits at CUA.[2] Permanency Review Order, 7/27/2021. Thereafter, in January 2022, Mother stopped consistently visiting with Child, and her last visit occurred in March 2022. *Id.* at 9-10.

---

[2] The certified record does not specify how often the supervised visits occurred.

On March 9, 2022, DHS filed a petition for the involuntary termination of Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b) and a separate petition to change Child's permanency goal from reunification to adoption. The trial court conducted an evidentiary hearing on May 17, 2022, when Child was four years old. Child was represented by a guardian *ad litem* ("GAL") and separate legal counsel.[3] Mother was represented by counsel and did not attend the hearing. DHS presented the testimony of Alesha Lomax, CUA case manager.

By decree dated and entered on May 17, 2022, the trial court involuntarily terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). In addition, by order entered the same date, the court changed Child's permanency goal to adoption. Mother filed timely notices of appeal and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Upon request by DHS, this Court consolidated Mother's appeals on August 26, 2022.

On appeal, Mother presents the following issues for review:

1.    Whether the trial court erred and/or abused its discretion by finding that [DHS] proved by clear and convincing evidence

---

[3] We note, with disapproval, that the GAL and legal counsel did not file briefs or letters regarding these appeals. However, at the hearing, Child's legal counsel stated that Child loves Mother, but recognizes that she cannot be with Mother at this point. N.T., 5/17/2022, at 23. She also stated that Child is very bonded to Maternal Aunt and her cousins and that it is in Child's best interest to be adopted. *Id.* Additionally, the GAL supported termination of Mother's parental rights.

that it was in [Child's] best interests to grant [DHS's] [g]oal [c]hange to adoption?

2.   Whether the trial court erred and/or abused its discretion by granting the DHS petition to [t]erminate Mother's [p]arental [r]ights because DHS failed to present clear and convincing evidence pursuant to [23 Pa.C.S.A. §] 2511(a)(1), (2), (5), and (8)?

3.   Whether the trial court erred and/or abused its discretion by finding that DHS proved by clear and convincing evidence that it was in the "best interests" of [Child] to be adopted pursuant to [23 Pa.C.S.A. §] 2511(b)?

Mother's Brief at 3 (suggested answers omitted).

We review involuntary termination orders for an abuse of discretion, which requires an error of law or a showing of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *See In re Adoption of L.A.K.*, 265 A.3d 580, 591 (Pa. 2021) (citation omitted). In applying this standard, appellate courts must accept the trial court's findings of fact and credibility determinations if they are supported by the record. *Interest of S.K.L.R.*, 256 A.3d 1108, 1123 (Pa. 2021); *see also In re Adoption of C.M.*, 255 A.3d 343, 358 (Pa. 2021).

Pennsylvania's Adoption Act governs involuntary termination of parental rights proceedings. *See* 23 Pa.C.S.A. §§ 2101-2938. Section 2511(a) provides grounds for involuntary termination of parental rights. If the trial court finds clear and convincing evidence supporting the existence of one of the grounds for termination set forth in subsection (a), the court must then

- 5 -

consider whether termination would best serve the child under subsection (b).

*Id.* § 2511(b).

The trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). Here, we analyze the court's termination decree pursuant to Section 2511(a)(8) and (b), which provide as follows:

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

* * *

**(b) Other considerations**.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(8), (b).

To satisfy Section 2511(a)(8), the petitioner must show three components: (1) that the child has been removed from the care of the parent for at least 12 months; (2) that the conditions which led to the removal or

placement of the child still exist; and (3) that termination of parental rights would best serve the needs and welfare of the child. ***In re Adoption of J.N.M.***, 177 A.3d 937, 943 (Pa. Super. 2018).

Unlike other subsections, Section 2511(a)(8) does not require the court to evaluate a parent's willingness or ability to remedy the conditions that led to the placement of the children. ***In re M.A.B.***, 166 A.3d 434, 446 (Pa. Super. 2017). "[T]he relevant inquiry" regarding the second prong of Section 2511(a)(8) "is whether the conditions that led to removal have been remedied and thus whether reunification of parent and child is imminent at the time of the hearing." ***In re I.J.***, 972 A.2d 5, 11 (Pa. Super. 2009). Further, the Adoption Act prohibits the court from considering, as part of the Section 2511(a)(8) analysis, "any efforts by the parent to remedy the conditions described [in the petition] which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S.A. § 2511(b).

We observe that Sections 2511(a)(8) and (b) both require a court considering a termination petition to assess the needs and welfare of the relevant child or children. However, the needs and welfare analysis required by Section 2511(a)(8) is distinct from the needs and welfare analysis required by Section 2511(b), and must be addressed separately. ***See In re C.L.G***., 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*).

This Court has recognized "that the application of [Section 2511(a)(8)] may seem harsh when the parent has begun to make progress toward

resolving the problems that had led to the removal of her children." ***In re Adoption of R.J.S.***, 901 A.2d 502, 513 (Pa. Super. 2006).

> However, by allowing for termination when the conditions that led to removal of a child continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time, to[-]wit [18] months, in which to complete the process of either reunification or adoption for a child who has been placed in foster care.

***Id***.

Regarding Section 2511(b), we consider whether termination of parental rights will best serve the children's developmental, physical and emotional needs and welfare. ***See In re Z.P.***, 994 A.2d 1108, 1121 (Pa. Super. 2010). "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." ***Id.*** "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." ***In re B., N.M.***, 856 A.2d 847, 856 (Pa. Super. 2004).

"When conducting a bonding analysis, the court is not required to use expert testimony. [Instead, s]ocial workers and caseworkers can offer evaluations as well." ***In re Z.P.***, 994 A.2d at 1121. "In cases where there is

no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008) (citation omitted). Further,

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent.

*In re A.S.*, 11 A.3d 473, 483 (Pa. Super. 2010). "Above all else . . . adequate consideration must be given to the needs and welfare of the child. A parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights." *In re Z.P.*, 994 A.2d at 1121 (quotation marks and citations omitted).

Mother's sole argument on appeal is that the trial court violated her guarantee of due process of law under the Fourteenth Amendment to the United States Constitution. Specifically, Mother asserts that the trial court repeatedly interrupted and barred Mother's counsel from cross-examining CUA case manager, Ms. Lomax, about Mother's bond with Child. Mother's Brief at 11-12.

"Due process requires nothing more than adequate notice, an opportunity to be heard, and the chance to defend oneself in an impartial tribunal having jurisdiction over the matter." *In re J.N.F.*, 887 A.2d 775, 781 (Pa. Super. 2005). "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and

- 9 -

cross-examine adverse witnesses." ***Wood v. Tucker***, 332 A.2d 191, 192 (Pa. Super. 1974), *quoting **Goldberg v. Kelly***, 397 U.S. 254, 269 (1970). "Due process is flexible and calls for such procedural protections as the situation demands." ***In re Adoption of Dale A., II***, 683 A.2d 297, 300 (Pa. Super. 1996), *citing **Mathews v. Eldridge***, 424 U.S. 319, 334, (1976).

DHS contends that this argument is waived because Mother failed to assert this error in her concise statements of errors complained of on appeal and in her brief's statement of questions involved. DHS Brief at 26-28. Indeed, in its Rule 1925(a) opinion, the trial court did not address Mother's argument because she did not include it in her concise statements. As such, we are constrained to agree with DHS that Mother has waived her claim regarding her alleged inability to fully cross-examine Ms. Lomax.[4] ***See In re M.Z.T.M.W.***, 163 A.3d 462, 466 (Pa. Super. 2017) ("[I]t is well-settled that issues not included in an appellant's statement of questions involved and concise statement of errors complained of on appeal are waived.").

Regarding Section 2511(a)(8), Mother baldly asserts that the trial court erred and/or abused its discretion by granting DHS's petition to terminate Mother's parental rights because DHS failed to present clear and convincing

---

[4] Even if not waived, we would conclude that the trial court did not infringe upon Mother's right to due process of law inasmuch as her counsel cross-examined Ms. Lomax, the only adverse witness presented in the case.

evidence. Mother's Brief at 3-4. Mother fails to elaborate on this contention in the argument section of her brief.

In its opinion, the trial court found that,

Mother's refusal to participate in her objectives demonstrates that the services provided to her would not alleviate the circumstances which necessitated the original placement of [Child]. Moreover, the evidence clearly established that termination would be in the best interest and welfare of [Child] as she is well-adjusted in her pre-adoptive home and has a strong bond with [Maternal Aunt] as well as her cousins in the home. Thus, this [c]ourt properly terminated Mother's parental rights pursuant to [Section 2511(a)(8)].

Trial Court Opinion, 7/12/2022, at 11. We agree.

Initially, at the time of the termination hearing, Child was in DHS's care for more than three years, far in excess of the statutory minimum. Concerning the second factor of Section 2511(a)(8), the trial court heard testimony from CUA case manager, Ms. Lomax, that Child was adjudicated dependent due to Mother's substance abuse. N.T., 5/17/2022, at 7. CUA provided Mother with objectives, but Ms. Lomax testified that Mother only successfully completed one, a parenting class. *Id.* at 11.

Importantly, Ms. Lomax stated that Mother did not successfully complete drug and alcohol treatment. *Id.* at 8-9. Ms. Lomax testified that, at one point, Mother was discharged from a drug and alcohol program. *Id.* at 17. Moreover, she further testified that Mother relapsed on PCP in June 2021 and since then Mother was inconsistent in producing negative random drug screens and contacting CUA. *Id.* at 9, 17. Since January 2022, Mother has

also been inconsistent with supervised visitation by attending only four visits, and her last visit occurred in March 2022. *Id.* at 9-10, 18. Ms. Lomax also stated that she spoke with Mother a few weeks before the termination hearing, but Mother refused to provide Ms. Lomax with her address. *Id.* at 8-9, 11. Finally, on direct examination, Ms. Lomax testified:

> Q: So at this time do you still have the concerns with [M]other's PCP use as you did three years ago in 2019?
>
> A: Yes.
>
> . . .
>
> Q: Is [M]other [in a] substantially closer place to reunifying [than] she was [three years and three months ago]?
>
> A: No.

*Id.* at 10, 14-15.

Regarding the third factor of Section 2511(a)(8), the trial court heard sufficient testimony that termination of Mother's parental rights would best serve the needs and welfare of Child. Ms. Lomax testified that Child, who was four years old at the time of the termination hearing, has lived with Maternal Aunt for three years and three months. *Id.* at 12. Child last saw Mother in March 2022. *Id.* at 10. There is no evidence in this record of a parent-child bond between Mother and Child. However, the record demonstrates a parent-child bond exists between Maternal Aunt and Child. *Id.* at 12-13. Maternal Aunt is a pre-adoptive resource and provides for all of Child's needs. *Id.*

Based on the foregoing testimony, the trial court was well within its discretion to terminate Mother's parental rights under Section 2511(a)(8) because Child had been removed from Mother's care in excess of the 12-month statutory minimum; the conditions which led to Child's removal continue to exist; and termination would best serve the needs and welfare of Child.

Mother addresses Section 2511(b) in her final issue and reiterates her argument that her counsel was barred by the trial court judge from asking questions during cross-examination. Mother's Brief at 20-21. Mother further contends that evidence regarding the parent-child bond was "too terse" and did not contain descriptions of how Child interacted with Mother. *Id.* at 20. Mother asserts that Ms. Lomax testified that Mother and Child spoke daily on the telephone until November 2021, and that Mother consistently visited Child until January 2022. *Id.* at 14. Mother further contends that Ms. Lomax testified that Child was bonded to Mother and that Child continued to ask about Mother after Mother's telephone calls and visits became less frequent. *Id.* at 5. Finally, Mother argues that the evidence presented by DHS regarding "irreparable harm" was not persuasive.[5] *Id.* at 21-22. We disagree.

---

[5] Mother also baldly asserts that Child "wants to continue having contact with her." Mother's Brief at 22. However, this assertion cannot be found in the record.

In its opinion, the trial court stated that it "heard compelling testimony that [Child] had not suffered harm from Mother's inconsistent visitation." Trial Court Opinion, 7/12/2022, at 12 (citation omitted). The trial court further stated that,

> there was compelling testimony that Child is significantly bonded with [Maternal Aunt]. The testimony demonstrated that Child's primary bond is with [Maternal Aunt] who meets all of Child's general[, m]edical, developmental, and emotional needs and who provides [Child] with love, safety, stability, and support. In determining that termination would best serve the needs and welfare of [Child], this [c]ourt considered that Mother has not been able to meet [Child's] emotional, physical, and developmental needs for over three years prior to the termination hearing.

*Id.*

Indeed, Ms. Lomax testified that Child and Mother spoke on the phone almost daily until November 2021, that Mother was consistent with visitation until January 2022, and that Child asked about Mother even after her contact with Child became inconsistent. N.T., 5/17/2022, at 10, 17-18. However, on cross-examination by Mother's counsel, Ms. Lomax clarified that she does not believe that Mother and Child share a parent-child bond. She testified as follows:

> Q: Okay. Again, going back to the November period, you said there was a bond between [M]other and [C]hild, correct?
>
> A: Yes.
>
> Q: At that point would you say it was a maternal bond, a child parent bond?
>
> A: No.

N.T., 5/17/2022, at 18. Further, despite Mother's contention that the testimony is "not persuasive," on direct examination, Ms. Lomax testified as follows regarding Child not suffering irreparable harm when Mother became inconsistent with supervised visitation:

> Q: And with respect to [M]other has there been any signs of any irreparable harm to [Child] from [M]other not visiting since March of 2022?
>
> A: No.
>
> Q: Has there been any signs of any irreparable harm when [M]other is inconsistent with her contact?
>
> A: No.

*Id.* at 14. Ms. Lomax also indicated that when Mother became inconsistent with contact, Child asked about her less frequently. *Id.* at 18. Moreover, as related above, Mother has not demonstrated that she can meet Child's needs and Mother is not substantially closer to reunifying with Child than she was more than three years ago. *Id.* at 14-15. Accordingly, it is clear from Ms. Lomax's testimony that whatever bond Child had with Mother was not a parent-child bond and Child would not suffer irreparable harm if Mother's rights were terminated.

Ms. Lomax also testified, on direct examination, to Child's bond with Maternal Aunt:

> Q: At this time with who do you think [Child] shares her primary parent child relationship?
>
> A: Maternal [A]unt.

Q: Have you observed the relationship?

A: Yes.

Q: And do you think they share a parent child bond?

A: Yes. I do.

Q: For the last three years and three months has [Maternal Aunt] been meeting all of [Child's] general, medical, developmental needs?

A: Yes.

Q: Does she meet all [Child's] emotional needs?

A: Yes.

Q: Does [Maternal Aunt] provide love, safety, stability, and support?

A: Yes.

*Id.* at 12-13. Ms. Lomax further stated that Maternal Aunt is a pre-adoptive resource. *Id.* at 13. Finally, according to Ms. Lomax, Child stated that she would not be sad if she stayed with Maternal Aunt and that Child calls Maternal Aunt "mom" and refers to her cousins as "brothers and sisters." *Id.* at 13-14. Consequently, Mother's arguments regarding Section 2511(b) fail, and the trial court did not abuse its discretion in determining that termination best serves Child's developmental, physical, and emotional needs and welfare pursuant to Section 2511(b).

Finally, Mother argues that the trial court abused its discretion by changing Child's permanency goal from reunification to adoption where DHS

did not prove by clear and convincing evidence that Child's goal should be changed. Mother's Brief at 11. Given our disposition affirming the termination decree, Mother's appeal from the goal change order is moot. Therefore, we do not review it. ***See In the Interest of D.R.-W.***, 227 A.3d 905, 917 (Pa. Super. 2020) ("An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.") (citation omitted).

Based on the foregoing, we affirm the decree terminating Mother's parental rights and dismiss as moot the order changing Child's permanency goal to adoption.

Termination decree affirmed. Appeal from goal change order dismissed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/20/2022

- 17 -