J-A24023-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: C.D.M., A MINOR CHILD | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: R.A.L.G. | : : : : : : | |
| | : | No. 356 WDA 2020 |

Appeal from the Order Entered January 31, 2020
In the Court of Common Pleas of Elk County Orphans' Court at No(s):
O.C. 4 of 2018

BEFORE:  BENDER, P.J.E., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY McLAUGHLIN, J.:              **FILED DECEMBER 03, 2020**

R.A.L.G. ("Mother") appeals from the order terminating her parental rights to her minor child, C.D.M. ("Child"). Mother's attorney has filed an **Anders**[1] brief and motion to withdraw; Mother has not submitted a response. We grant counsel's request and affirm the termination order.

Elk County Children and Youth Services ("CYS") filed a petition on January 25, 2018, seeking involuntary termination of Mother's parental rights to Child. CYS alleged grounds for termination under 23 Pa.C.S.A. §§ 2511(a)(1), (a)(2), (a)(5), and (a)(8). The court held a hearing on the petition in April 2019.

Prior to the start of the involuntary termination hearing, Mother expressed willingness to execute a consent to adoption. **See** 23 Pa.C.S.A. §

_____

[1] **Anders v. California**, 386 U.S. 738 (1967).

2504. However, the parties agreed to proceed with the hearing, so long as the court held any decision on involuntary termination in abeyance for 30 days, the period in which a parent may withdraw a consent to adoption. **See** N.T., 4/10/19, at 7-8; **see also** 23 Pa.C.S.A. § 2711(d). The court agreed to do so. N.T. at 8, 15-16, 27.

The parties stipulated that CYS had served Mother with the petition and that she had received proper notice of the hearing. **Id.** at 5-6. They also stipulated to the qualifications of Dr. Allen H. Ryen as an expert in child psychology, as well as to the admission of Dr. Ryen's March 2017 and February 2018 bonding assessment reports and of the transcript of his testimony from an April 2018 goal change hearing. **See id.** at 5. Dr. Ryen's reports and testimony were to the effect that Child was bonding to foster parents and his bond with Mother was "weak and insecure" and not "positive or nurturing," and Dr. Ryen "argued strongly for termination of parental rights." Findings of Fact and Conclusions of Law, filed 1/31/20, at 9 (unpaginated), ¶¶ 16-18. The court also took judicial notice of documents filed in the corresponding dependency case, and it heard the testimony of a CYS caseworker and one foster parent.

After CYS finished presenting evidence supporting the involuntary termination of Mother's parental rights, the court colloquied Mother about her consent to adoption. Mother stated she understood her consent would waive her rights to require CYS to prove its termination petition by clear and convincing evidence, cross-examine witnesses against her, and present her

own evidence. N.T. at 20-21. The court asked if she had anything to add. Mother stated that she was consenting to adoption because it was best for Child, and so that an involuntary termination of her parental rights to Child would not count against her in future dependency proceedings for another child. *Id.* at 22; *see also* 42 Pa.C.S.A. § 6302 (defining "Aggravated circumstances" for purposes of Juvenile Act as including involuntary termination of parental rights). At the conclusion of the hearing, Mother executed a consent to adoption.

CYS then sought confirmation of the consent to adoption, and on June 7, 2019, Mother filed a Revocation of Consent to Termination of Parental Rights, alleging duress.[2] CYS then asked the court to rule on the termination petition, and in January 2020, the court granted the petition and involuntarily terminated Mother's parental rights to Child. This timely appeal followed.

As noted above, Mother's counsel has filed an *Anders* brief and motion to withdraw, and we must address the facial sufficiency of both filings before turning to the merits of the appeal. *Commonwealth v. Goodwin*, 928 A.2d 287, 290 (Pa.Super. 2007) (*en banc*). In an *Anders* brief, counsel must (1)

---

[2] *See* 23 Pa.C.S.A. § 2711(c)(3)(i)(A) ("Notwithstanding paragraph (1), . . . [a]n individual who executed a consent to an adoption may challenge the validity of the consent only by filing a petition alleging fraud or duress within the earlier of the following time frames: (A) Sixty days after the birth of the child or the execution of the consent, whichever occurs later[;] (B) Thirty days after the entry of the adoption decree"). *But see* 23 Pa.C.S.A. § 2711(c)(1)(ii) ("For a consent to an adoption executed by a birth mother, the consent is irrevocable more than 30 days after the execution of the consent").

summarize the procedural history and facts of the case, with citations to the record; (2) refer to anything in the record that arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; (4) set forth counsel's reasons for so concluding. *Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009). Counsel's request to withdraw must also state that counsel has examined the record and determined the appeal would be frivolous. *Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa.Super. 2013) (*en banc*). Counsel must furnish a copy of the *Anders* brief to the appellant, and advise the appellant that he or she has the right to retain other counsel or proceed *pro se*. *Id.*

Counsel has met the foregoing requirements. We will therefore conduct our own review of the record to determine whether the appeal is wholly frivolous before passing on counsel's request to withdraw. *Santiago*, 978 A.2d at 355 n.5.

In the *Anders* brief, counsel identifies the following issues:

1. Whether the [t]rial [c]ourt erred as a matter of law or committed an abuse of discretion when it terminated [M]other's parental rights without having conducted a complete hearing on the matter?

2. Whether the [t]rial [c]ourt erred as a matter of law or committed an abuse of discretion when it terminated mother's parental rights . . . when termination is not supported by the evidence?

*Anders* Br. at 6.

When reviewing the involuntary termination of parental rights, we accept the factual findings and credibility determinations of the trial court so long as the record supports them. ***In re T.S.M***., 71 A.3d 251, 267 (Pa. 2013). We review the trial court's termination decision for an error of law or abuse of discretion. ***In re Adoption of K.C.***, 199 A.3d 470, 473 (Pa.Super. 2018). We will not reverse without a "demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." ***In re Adoption of S.P.***, 47 A.3d 817, 826 (Pa. 2012).

## I. Due Process

Counsel first raises whether Mother received due process at the involuntary termination hearing. He states that the CYS caseworker did not testify that she believed it was in Child's best interest to terminate involuntarily Mother's parental rights. Counsel also questions whether Mother "fully appreciate[d]" that the hearing was proceeding based on stipulations, because, at the time, Mother was intending to consent to Child's adoption. ***Anders*** Br. at 16.

Due process requires adequate notice, an opportunity to be heard, and the chance to defend oneself in an impartial tribunal having jurisdiction over the matter. ***In re J.N.F.***, 887 A.2d 775, 781 (Pa.Super. 2005). It also puts the burden on the party seeking termination of parental rights to prove by clear and convincing evidence that the parent can no longer perform parental duties and thus are not entitled to parental rights. ***See In re D.C.D.***, 105 A.3d 662, 676-77 (Pa. 2014); ***In re A.M.B.***, 812 A.2d 659, 670 (Pa.Super. 2002).

In addition, the Adoption Act incorporates the clear-and-convincing evidence standard and "the statutory construct requires specific determinations by the trial court regarding the proper placement and permanency goals of the children at each step of the process." **In re D.C.D.**, 105 A.3d at 676.[3] If the clear-and-convincing evidence standard is met, a court may proceed with involuntary termination in the face of a parent's stated intent to consent to adoption or voluntarily relinquish their parental rights. **In re A.M.B.**, 812 A.2d at 670-73, 675.

Our review of the record reveals no basis on which to argue that Mother did not receive the protections due to her. Furthermore, regardless of the caseworker's testimony, the parties stipulated to the admission of Dr. Ryen's prior testimony and bonding assessment reports. We agree with counsel that this issue is frivolous.

## II. Sufficiency of Evidence

Counsel next raises the sufficiency of the evidence. Counsel states the trial court should not have considered evidence post-dating January 25, 2018, the date CYS filed the petition. Counsel also questions whether the court properly considered evidence post-dating the termination petition, as CYS's petition did not specifically reference the January 25, 2018 permanency review

---

[3] **See also** A.M.B. at 670 (reviewing due process protections afforded to parents preceding involuntary termination hearing, including "extensive legal and social work, child welfare and court resources and time . . . [, f]iling of dependency petitions, hearings in juvenile court, adjudication of the adoptees as dependent children, . . . dispositional hearings, permanency hearings, [and] involuntary termination petitions") (footnotes omitted).

order. Counsel also raises whether the trial court erred in relying on the findings of prior judges in the case.

We find this issue to be frivolous as well. By way of background, the Adoption Act provides that a court "must engage in a bifurcated process prior to terminating parental rights." *In re L.M*., 923 A.2d 505, 511 (Pa.Super. 2007). First, the court must focus on the conduct of the parent and determine whether there is "clear and clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a)." *Id.* Clear and convincing evidence is evidence "that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." *In re Adoption of K.C.*, 199 A.3d at 473 (citation omitted). A reviewing court need only affirm the trial court's decision as to any one subsection of Section 2511(a). *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*).

The trial court must then shift its focus to the child, and determine "the needs and welfare of the child under the standard of best interests of the child." *In re L.M*., 923 A.2d at 511 (citing Section 2511(b)). "One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond." *Id.* The court must consider whether severing the bond "would destroy an existing, necessary and beneficial relationship." *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011) (citation omitted). The court must also consider any bond

between the child and pre-adoptive foster parents. ***In re T.S.M.***, 71 A.3d at 268.

When entertaining a termination petition "pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S.A. § 2511(b).

Here, CYS alleged grounds for termination under 23 Pa.C.S.A. §§ 2511(a)(1), (a)(2), (a)(5), and (a)(8).[4] The court found CYS presented clear

_____

[4] Those subsections provide:

> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

> * * *

> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

and convincing evidence of grounds for termination under each of those subsections. *See* Findings of Fact and Conclusions of Law at ¶¶ 35-38. However, the termination order only expounded upon the basis for termination under 2511(a)(8). *Id.* at ¶¶ 44-47. Under that subsection, CYS was required to show that 12 months have passed since Child was removed from Mother; "the conditions which led to the removal . . . continue to exist"; and "termination of parental rights would best serve the needs and welfare of the child." 23 Pa.C.S.A. § 2511(a)(8).

The court first found that more than 12 months had elapsed since Child's removal. Findings of Fact and Conclusions of Law at ¶ 46. Next, the court found that the conditions that led to Child's removal continued to exist. The court found, "Mother has not made any continual or constant progress; to the contrary, [M]other has stagnated throughout all prior review periods at a minimal progress level. This has led to a failure on Mother's part to alleviate the circumstances which led to the Child's placement[.]" *Id.* at ¶ 23. The court also stated, "Although [M]other complied with some aspects of her family

---

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8).

service plan, evidence established that the conditions that led to the [C]hild's removal, including lack of parenting skills and sporadic compliance with her mental health issues, had not been corrected when the termination petition was filed[.]" *Id.* at ¶ 47.

Finally, the court found that termination would best advance "[t]he developmental, physical, and emotional needs and welfare of the Child." *Id.* at ¶ 28, 39. The court reviewed Dr. Ryen's bonding assessments and testimony, and observed that Dr. Ryen had concluded Mother's interactions with Child reflected a "decaying relationship which was unhealthy to begin with." *Id.* at ¶ 17. The court similarly found that terminating Mother's parental rights to Child would be in Child's best interests under subsection 2511(b). *Id.* at ¶ 29, 40. The court found "there is no evidence that a secure or primary bond exists between the Child and [Mother]," but that Child "has a secure bond with the foster parents, which . . . should, in the Child's best interest, not be severed." *Id.* at ¶ 42.

The record provides no reasonable basis on which to challenge the court's conclusion that there was clear and convincing evidence to support termination under subsections 2511(a)(8) and (b). A claim that the court improperly considered evidence post-dating the filing of the petition lacks foundation. As discussed above, that limitation only bars the court from considering remedial efforts a parent makes after the filing of the petition. Here, as the trial court noted, subsection 2511(a)(8) only requires the court to determine whether the conditions which led to Child's removal continue to

exist. It does not entail any analysis of the parent's efforts in alleviating those conditions, and does not bar consideration of evidence accruing after the filing of the petition when determining whether the conditions persist. Even if the statute did contain such a bar, the court here specified that Mother's mental health issues "had not been corrected **when the termination petition was filed**[.]" *Id.* at ¶¶ 44-45, 47 (emphasis added).

Nor is there any reasonable basis on which to argue that the court erred in considering the dependency orders. The court's taking of judicial notice was proper and Mother did not object to its doing so at the termination hearing. Furthermore, the court's decision was supported by Dr. Ryen's bonding assessments and testimony, and the testimony of the caseworker and foster parent at the termination hearing. Having found the issues counsel flagged wholly frivolous, and having discovered no non-frivolous issues, we grant counsel leave to withdraw and affirm the order of the trial court.

Order affirmed. Application to withdraw granted.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/3/2020