J-S02016-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.B.A.I.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2414 EDA 2023 |

Appeal from the Order Entered August 24, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000461-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: S.B.A.I.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2415 EDA 2023 |

Appeal from the Decree Entered August 24, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000640-2022

BEFORE:   LAZARUS, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED FEBRUARY 20, 2024**

D.S. (Mother) appeals from the decree terminating her parental rights

to S.B.A.I.D. (Child), a daughter born in September 2020, and the order

_____

[*] Former Justice specially assigned to the Superior Court.

changing Child's permanency goal from reunification to adoption.[1, 2]  Mother's

appointed counsel, Emily Cherniack, Esquire (Counsel), has also filed an

application to withdraw as counsel and an accompanying **Anders** brief.[3]  We

grant Counsel's application to withdraw and affirm the juvenile court's decree

and order.

Child is the youngest of Mother's ten children.[4]  **See** N.T. 8/24/23, at

31-32.  The Philadelphia Department of Human Services (DHS) first became

involved with the family in 2016.  **See generally** Petition for Involuntary

Termination, 11/25/22, Exhibit A (Statement of Facts), at 1 (unnumbered).

Throughout the course of DHS's involvement, all of Mother's children had been

placed under DHS supervision, and the family was receiving services from the

Community Umbrella Agency (CUA).  **See** N.T., 8/24/23, at 41.

On April 15, 2021, DHS received a report that Mother had given birth to

Child without informing DHS or CUA.  **See id.** at 32.  At that time, Mother's

---

[1] This Court *sua sponte* consolidated Mother's appeals.

[2] The juvenile court also terminated the parental rights of Child's father, K.D. (Father) on the same date.  Father's appeals from the termination and goal change are before this panel and docketed at 2417 and 2418 EDA 2023.

[3] **See Anders v. California**, 386 U.S. 738 (1967); **see also In re S.M.B.**, 856 A.2d 1235, 1237 (Pa. Super. 2004) (explaining that the **Anders** procedure for withdrawal of court-appointed counsel has been extended to appeals involving termination of parental rights).

[4] Nine of the children are also Father's biological children.  Mother reported the father of her oldest child is unknown.

nine other children were in DHS's custody with active dependency petitions. *See* Motion to Compel Cooperation, 4/30/21. DHS visited the family's home several times, but no one answered the door. *See id.*

On April 22, 2021, Father called DHS, indicating that he and Mother would speak to DHS over the telephone, but he refused to agree to a home visit. *See id.* He also denied that the couple had a new baby. *See id.* Because the family refused to allow DHS to visit the family's home, on April 30, 2021, DHS filed a motion to compel cooperation with the child protective services investigation. *See id.* DHS also cited concerns about Father's active criminal case, in which Mother's oldest child (Father's stepchild) was named as the victim. *See id.* The juvenile court granted the motion to compel. The motion was subsequently dismissed after Child was deemed safe.

On July 7, 2021, DHS filed a dependency petition for Child. DHS averred that when DHS workers arrived at the family's home for a visit in June 2021, the family did not answer the door. DHS also received allegations that Mother and Father had left the state with Child.

Ultimately, on August 19, 2021, U.S. Marshals located Mother, Father, and Child in New Jersey. *See* N.T., 8/24/23, at 43, 117. Mother and Father were arrested at that time. On the same day, DHS obtained an order for protective custody, and Child was placed in foster care. The juvenile court lifted the order for protective custody after a shelter care hearing on August 20, 2021, but Child remained in DHS care. DHS filed another dependency

petition on August 27, 2021. Following a hearing, the juvenile court adjudicated Child dependent on November 17, 2021. The court emphasized that Mother and Father were both incarcerated at that time. Order of Adjudication, 11/17/21. Further, the juvenile court took judicial notice of a finding of child abuse as to Mother during a September 4, 2019, goal change and termination hearing for Mother's other children. *See id.*[5] After that time, Child remained in foster care, and her permanency goal continued to be reunification with Mother and Father.[6]

On November 25, 2022, DHS filed a petition to involuntarily terminate Mother's and Father's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).

On December 14, 2022, at the dependency docket, the juvenile court determined aggravated circumstances existed against Mother and Father. The court directed that DHS was not required to continue with efforts to reunify Child with Mother and Father. *See* Juvenile Court Opinion, 2/9/23, at 1-2.

---

[5] The September 4, 2019, hearing transcripts are included with Child's dependency order in the certified record. However, the transcripts are not designated as an exhibit or otherwise numbered as an attachment.

[6] Mother's parental rights as to the parties' eight other children were involuntarily terminated on August 11, 2022.

Notably, on March 3, 2023, Mother was convicted of charges stemming from her abuse of two of Child's siblings.[7] Based on Mother's criminal convictions, DHS filed an amended termination petition on March 15, 2023, to include Section 2511(a)(9) and (10) as grounds for termination.

The juvenile court held a termination and goal change hearing on August 24, 2023. The court heard testimony from Jelea McNeil, the CUA caseworker who worked with the family since 2020; and Shawn Jackson, the CUA case manager for Child. Mother appeared via video conference, as she was incarcerated. However, after expressing her frustration with the proceedings, Mother opted to leave the hearing. Counsel remained present to represent Mother's interests. Child was represented by her guardian *ad litem* (GAL).[8] DHS also offered as exhibits Mother's criminal docket sheets, which reflect that Mother was sentenced to 5 to 10 years in prison at each docket. N.T., 8/24/23, DHS Exhibit 4A and 4B. Significantly, each sentencing order included a stay-away order regarding the respective victims (Child's siblings), and **prohibited Mother from having unsupervised contact with minors**

---

[7] At trial court docket 8423-2021, a jury convicted Mother of aggravated assault – victim less than 13 years, and defendant 18 years or older; endangering the welfare of children – parent or guardian; and possession of an instrument of crime. At trial court docket 8425-2021, a jury convicted Mother of aggravated assault – victim less than 13 years, and defendant 18 years or older; conspiracy; endangering the welfare of children – parent or guardian; and possession of an instrument of crime.

[8] Child's GAL stated there was no conflict between Child's legal and best interests. N.T., 8/24/23, at 40.

**upon her release from incarceration.** ***See id.*** At the close of the hearing, the juvenile court denied DHS's petition to terminate Mother's parental rights as to Section 2511(a)(1). The court otherwise granted the petition and terminated Mother's parental rights to Child under Section 2511(a)(2), (5), (8), (9), and (b).[9] In a separate order, the juvenile court changed Child's permanency goal to adoption.

Mother filed timely notices of appeal from the termination decree and goal change order, as well as a contemporaneous Pa.R.A.P. 1925(a)(2)(i) concise statement of errors complained of on appeal.[10] The juvenile court filed a Pa.R.A.P. 1925(a) opinion.

Before reaching the substantive merits of this appeal, we address Counsel's application to withdraw. ***See In re S.M.B.***, 856 A.2d at 1237 (stating "this Court may not review the merits of the underlying issues until we address counsel's request to withdraw"). To withdraw from representation under ***Anders***, counsel must

---

[9] We recognize the amended termination petition also sought termination under Section 2511(a)(10) and identified both parents. However, it appears DHS sought termination under that subsection only with regard to Father.

[10] After filing the notices of appeal, Mother's termination counsel sought permission to withdraw from representation, citing Mother's wish that counsel "fire herself." This Court granted termination counsel's petition to withdraw and ordered the juvenile court to conduct a hearing pursuant to ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998), to determine whether Mother wished to proceed *pro se*. Mother indicated she wished to be appointed new counsel, and the court appointed current Counsel to represent Mother on appeal.

1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the *Anders* brief to the appellant; and 3) advise the appellant that he or she has the right to retain private counsel or raise additional arguments that the appellant deems worthy of the court's attention.

*In re J.D.H.*, 171 A.3d 903, 907 (citation and brackets omitted). Counsel must also "attach to [a] petition to withdraw a copy of the letter sent to the[] client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

Additionally, a proper *Anders* brief must

(1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009).

Instantly, Counsel filed an application to withdraw and an *Anders* brief asserting that Mother's appeal lacks merit and is frivolous. *See* Application to Withdraw, 11/28/23, ¶¶ 3, 5. In her application, Counsel confirmed she conducted a thorough and conscientious review of the record. *Id.*, ¶ 4. Counsel included her letter to Mother, which properly advised Mother of her right to retain new counsel or proceed *pro se* to raise any other issues she deems worthy of this Court's attention. *See id.*, Appendix. Counsel also

indicates she provided Mother with a copy of the ***Anders*** brief. ***See id.*** Mother filed no response raising additional issues.

Counsel's ***Anders*** brief (a) summarizes the procedural history and facts of the case with citations to the record; (b) identifies four issues that could arguably support Mother's appeal; and (c) explains why the appeal is frivolous. Accordingly, Counsel has complied with the requirements of ***Anders*** and ***Santiago***. Thus, we "undertake an independent examination of the record to determine whether the appeal is wholly frivolous." ***In re S.M.B.***, 856 A.2d at 1237.

The ***Anders*** brief raises the following issues:

A. Whether [DHS] failed to prove by clear and convincing evidence that [M]other's parental rights should have been terminated pursuant to 23 Pa.C.S. § 2511(a)(2), (5) and (8) since she had substantially completed her single case plan objectives as required to have [C]hild returned to her?

B. Whether there was a strong emotional and parental bond between [M]other an[d C]hild which would have had a negative effect on [C]hild if the parental bond was permanently severed pursuant to § 2511(b)?

C. Whether the trial court erred when it changed the permanency goal from reunification to adoption[?]

D. Whether the trial court improperly denied [Mother's] rights to due process, by denying her the opportunity to participate in this proceeding in-person?

***Anders*** Brief at 5.

We address Mother's first two claims together. First, Mother argues DHS failed to establish grounds for termination under 23 Pa.C.S.A. § 2511(a)(2),

(5), and (8) because she substantially completed her case plan objectives. *Anders* Brief at 9-10. Mother also challenges termination under 23 Pa.C.S.A. § 2511(b). *Anders* Brief at 11-12. However, Counsel claims this issue is frivolous, as Mother has not seen Child since Child's removal from Mother and Father's care. *Id.* at 11. Counsel also acknowledges Mother's criminal sentence includes a stay-away order. *Id.*

In considering Mother's claims, we recognize

appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the orphans' court's findings of fact and credibility determinations if they are supported by the record. Where the orphans' court's factual findings are supported by the evidence, an appellate court may not disturb the orphans' court's ruling unless it has discerned an error of law or abuse of discretion.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, the orphans' court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

***Interest of M.E.***, 283 A.3d 820, 829-30 (Pa. Super. 2022) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which provides for a bifurcated analysis. First, the juvenile court "must focus on the parent's conduct" relative to the enumerated ground for termination set forth in 23 Pa.C.S.A. § 2511(a)(1)-(11). ***Id.*** at 830. If the court finds grounds for termination under Section 2511(a), it must then assess the evidence relative to the child's needs and welfare under Section 2511(b), "giving primary consideration to the developmental, physical and emotional needs and welfare of the child." ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013).

Here, the juvenile court terminated Mother's parental rights to Child under Section 2511(a)(2), (5), (8), (9), and (b). We address Mother's termination under subsection 2511(a)(9),[11] which provides, in relevant part:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *
>
> (9) The parent has been convicted of one of the following in which the victim was a child of the parent:
>
> ....

---

[11] We acknowledge the ***Anders*** brief contains no argument as to subsection 2511(a)(9). However, it is well settled that we need only agree with the juvenile court as to any one subsection of section 2511(a), as well as subsection (b). ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

> (ii) a felony under 18 Pa.C.S. § 2702 (relating to aggravated assault)

23 Pa.C.S.A. § 2511(a)(9)(ii). "By its plain language, the Adoption Act only requires the petitioner to introduce proof of the parent's conviction, not proof of the facts underlying the parent's guilt." *Interest of M.E.*, 283 A.3d at 831.

During the termination hearing, DHS introduced certified copies of Mother's convictions at 8423-2021 and 8425-2021. *See* N.T., 8/24/23, at 24-15 (offering DHS Exhibits 4A and 4B). The convictions arose from Mother's aggravated assault of two of her minor children. *See id.* at 26; *see also* DHS Exhibit 4A (Mother's conviction and sentence at 8423-2021, including a conviction of aggravated assault, 18 Pa.C.S.A. § 2702(a)(9)) and DHS Exhibit 4B (Mother's conviction and sentence at 8425-2021, including a conviction of aggravated assault, 18 Pa.C.S.A. § 2702(a)(9)). Counsel for DHS explained that at each docket, Mother was sentenced to 5 to 10 years in prison. N.T., 8/24/23, at 26-27. Counsel for DHS also emphasized that the sentencing orders include a stay-away order for the respective victims, *id.* at 26, as well as a prohibition on any unsupervised contact with minors, with "no qualification regarding [] biological children or not." *Id.* at 27. Accordingly, we conclude the juvenile court did not abuse its discretion in finding DHS established the statutory grounds for termination under Section 2511(9)(ii).

We now turn to Section 2511(b), which provides:

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights

of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. …

23 Pa.C.S.A. § 2511(b).

"The plain language of Section 2511(b) clearly mandates that, in assessing the petition to terminate parental rights, the primary consideration must be the child's developmental, physical and emotional needs and welfare." *In the Interest of K.T.*, 296 A.3d 1085, 1105 (Pa. 2023) (quotation marks omitted). This Court has repeatedly stated that "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *In re C.W.U., Jr.*, 33 A.3d 1, 6 (Pa. Super. 2011) (citation omitted). "[T]he court must consider whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *Interest of: J.R.R.*, 229 A.3d 8, 12-13 (Pa. Super. 2020) (citation and quotation marks omitted).

Regarding Child's best interest under Section 2511(b), the juvenile court stated on the record:

It is in [Child's] best interest to terminate [Mother's] rights involuntarily. [Child] deserves to have permanency and to move on with her life and not be caught in the foster system indefinitely.

….

[T]his [c]ourt will concede that when [Child] came into care at 11 months [old], clearly she and [Mother] were very bonded. That's

the only parent [Child] had known. [Child] had been with [Mother] for the 11 months that they were on the run. But since that time, in the two years that have ensued since then, [Child has] had absolutely no contact with [Mother] because there has been a criminal stay away order in effect.

N.T., 8/24/23, at 86-88. The court determined that "any parent-child bond developed in the Child's first eleven (11) months of life, was eroded by the lack of any contact between Mother and Child in the past two (2) years, due to the criminal stay away order." Rule 1925(a) Opinion, 10/24/23, at 3.

We also refer to the following testimony, which the juvenile court found credible. *See* N.T., 8/24/23, at 88 (crediting the testimony of Ms. McNeil and Ms. Jackson). Ms. McNeil testified that Child has been residing in foster care, with another sibling, since her adjudication. *Id.* at 39. Ms. McNeil confirmed Child has not had any contact with Mother since DHS obtained the order of protective custody in August 2021. *Id.* at 43-44; *see also id.* at 44-45 (Mother has been incarcerated since August 2021).

Ms. Jackson testified Child is "doing great" in her foster home and has "a very good bond with her foster parents." *Id.* at 54; *see also id.* at 58 (stating Child has a parent-child bond with foster parents). According to Ms. Jackson, Child is in placement with a sibling, and she has a great relationship with that sibling. *Id.* Ms. Jackson opined that Child would not suffer irreparable harm if the court terminated Mother's rights. *Id.* at 58, 63. Additionally, Ms. Jackon described Child's foster home as a pre-adoptive home. *Id.* at 63.

The record supports the juvenile court's finding that termination of Mother's parental rights would serve Child's best interest. The credited testimony reflects that, though Child had a bond with Mother for the first 11 months of her life, Child had no contact with Mother for approximately two years. In that time, Child developed a strong, beneficial bond with her foster family. The juvenile court was within its discretion to prioritize Child's need for safety, security, and permanency. Accordingly, we conclude the juvenile court did not err or abuse its discretion by terminating Mother's parental rights.

In her third issue, Mother challenges the juvenile court's order changing Child's permanency goal from reunification to adoption. *Anders* Brief at 12. As we have upheld the termination of Mother's parental rights, this issue is moot. *See Interest of D.R.-W.*, 227 A.3d 905, 917 (Pa. Super. 2020) (father's challenge to child's goal change was moot after this Court affirmed the orphans' court's termination decrees).

In her fourth issue, Mother contends she was denied due process because she was unable to participate in the termination hearing in person. *Anders* Brief at 13.

"Due process requires nothing more than adequate notice, an opportunity to be heard, and the chance to defend oneself in an impartial tribunal having jurisdiction over the matter." *In re Adoption of K.M.D.*, 261

A.3d 1055, 1059 (Pa. Super. 2021). The Adoption Act governs the notice requirement in a termination proceeding:

**§ 2513. Hearing**

* * *

**(b) Notice.--**At least ten days' notice shall be given to the parent … whose rights are to be terminated, by personal service or by registered mail to … their last known address or by such other means as the court may require. …

23 Pa.C.S.A. § 2513(b).

Mother does not dispute that she received notice of the termination hearing. *See* Rule 1925(a) Opinion, 10/24/23, at 5 (confirming that Mother was provided notice in person and by mail). Indeed, she attended the beginning of the hearing via video conference. Mother instead asserts that she was entitled to attend the hearing in person.

"[N]either the Adoption Act nor the cases interpreting it require that a parent must be present in order for a court to grant" a termination petition. *In Interest of D.F.*, 165 A.3d 960, 965 (Pa. Super. 2017). This Court has long held that

> a trial court is not required to transport an incarcerated parent to a termination hearing in order to satisfy the needs of due process. However, if the incarcerated parent desires to contest the termination petition, the trial court must afford the incarcerated parent the ability to participate meaningfully in the termination hearing through alternate means.

*In re Adoption of J.N.F.*, 887 A.2d 775, 781 (Pa. Super. 2005) (citations omitted).

- 15 -

Here, the record reflects the juvenile court provided Mother a sufficient alternative means to participate meaningfully in the termination hearing. *See id.* Rather than availing herself of the opportunity to participate, Mother became argumentative immediately upon entering the hearing remotely. *See generally* N.T., 8/24/23, at 5-21. As the juvenile court aptly explained,

> Mother was afforded the opportunity to participate in the hearing, but declined to do so, as she participated in the first portion of the hearing via video conferencing, but—against counsel's advice— walked out of the room from which she was participating.

Rule 1925(a) Opinion, 10/24/23, at 5. We discern no due-process violation where Mother chose not to participate in the proceedings. Mother is not entitled to relief on this claim.

Finally, our independent examination of the record indicates that there are no other non-frivolous claims that Mother can raise. *See In re S.M.B.*, 856 A.2d at 1237. Accordingly, we agree with Counsel's assessment that Mother's appeal is frivolous, and grant Counsel permission to withdraw from her representation of Mother.

Application to withdraw granted. Decree and order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/20/2024

- 16 -