J-S04029-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: B.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.M., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2161 EDA 2023 |

Appeal from the Order Entered July 25, 2023
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No: CP-51-DP-0002711-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: B.C.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.M., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2162 EDA 2023 |

Appeal from the Decree Entered July 25, 2023
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No: CP-51-AP-0000285-2020

BEFORE: BOWES, J., STABILE, J., and LANE, J.

MEMORANDUM BY STABILE, J.: **FILED APRIL 29, 2024**

D.M. ("Father") appeals from the July 25, 2023 decree granting the petition of the Philadelphia Department of Human Services ("DHS") and involuntarily terminating his parental rights to his daughter, B.M. a/k/a B.C.M. ("Child"), born in January 2013, pursuant to 23 pursuant to 23 Pa.C.S.A. §

2511(a)(1), (2), (5), (8), and (b).[1,2] Father further appeals from the July 25, 2023 order changing Child's permanency goal to adoption pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6351. After careful review, we affirm the termination decree and dismiss Father's appeal from the goal change order as moot.

We glean the following factual and procedural history from the certified record. In August 2018, in-home services were opened as a result of Mother and Child's youngest sibling, J.R., testing positive for illegal substances at the time of his birth. Notably, Mother had a history of substance abuse and mental health issues. *See* N.T., 7/25/23 (Volume 1), at 21-22.

DHS obtained protective custody of Child less than six months later, on December 24, 2018, following J.R.'s death. Child was placed in kinship care with a paternal aunt.[3] At a shelter care hearing on December 26, 2018, the court maintained DHS's legal and physical custody of Child. *See id.* at 21, 31.

---

[1] By separate decree entered the same date, the trial court involuntarily terminated the parental rights of any unknown father. No unknown father filed an appeal or participated in the instant appeals.

[2] Child's mother, I.P. ("Mother"), is deceased. She passed away in March 2021 from a drug overdose. *See* N.T., 7/25/23 (Volume 1), at 22, 54-55.

[3] Child was placed with her younger sister, A.R., who is not a subject of this appeal. At the time of the subject hearing, Child and A.R. were placed in a pre-adoptive general foster care home, their fourth placement since coming into care. *See id.* at 31-33, 41, 49-50.

The court adjudicated Child dependent on January 4, 2019, and established a permanency goal of reunification.[4] The court further ordered Father be referred for, *inter alia*, domestic violence services; to the Clinical Evaluation Unit ("CEU") for full drug and alcohol screen, dual diagnosis assessment, monitoring, and 3 random screens; and to the Achieving Reunification Center ("ARC") for appropriate services. ***See*** Order of Adjudication and Disposition, 1/4/19, at 2. While the court ordered supervised visitation, Father's visitation was noted as suspended.[5] ***See id.*** In furtherance of reunification, DHS established a single case plan with objectives in conjunction with the aforementioned directives of the court. ***See*** DHS Exhibits 3, 4, 6 (single case plans); N.T, 7/25/23 (Volume 1), at 27, 30, 43.

Throughout the ensuing dependency proceedings, the court conducted regular review hearings at which it maintained Child's commitment and placement. The court consistently characterized Father as non-compliant with the permanency plan. ***See*** DHS Exhibit 2 (dependency orders). Father also has an extensive criminal history and was in and out of prison throughout the dependency process. ***See*** N.T, 7/25/23 (Volume 1), at 27-28, 30, 43, 47, 59, 67; ***see also*** DHS Exhibit 2 (dependency orders).

---

[4] On December 21, 2020, the court instituted a concurrent goal of adoption.

[5] Visitation with Father was suspended due to the issuance of a Protection from Abuse order against him on behalf of Mother and Child. ***See*** N.T., 7/25/23 (Volume 1), at 36.

On August 24, 2020, DHS filed a petition for the involuntary termination of Father's parental rights pursuant to 23 Pa.C.S.A. § 2511 (a)(1), (2), (5), (8), and (b), as well as a petition to change Child's permanency goal from reunification to adoption. After being continued and held in abeyance on numerous occasions over the next several years, the trial court held a combined evidentiary hearing on July 25, 2023.

Father, who was incarcerated and not present, was represented by counsel. Captain William Hans, Commanding Officer Philadelphia Sheriff's Office, Family Court, testified as to efforts to secure Father's presence and/or participation at the July 25, 2023 proceeding. *See* N.T, 7/25/23 (Volume 1), at 11-16. Specifically, Captain Hans testified that Father's name appeared on a list of inmates to be brought to court that day as a result of a "bring down" request.[6] Father was removed from his prison housing unit and brought to the receiving room, where he refused to get on the bus for transport and "caused a disturbance." *Id.* at 11-12. In response to further inquiry from the court, Captain Hans reported that Father additionally refused to participate in the hearing via video conference.[7] *Id.* at 14.

---

[6] The record reveals previous bring down requests in September 2022, November 2022, January 2023, March 2023, and April 2023. Notably, the court acknowledged that in April 2023, Father similarly refused to get on the bus for transport to court. *See id.* at 7-8, 10.

[7] Subsequently, when given the opportunity to question Captain Hans regarding this specific inquiry by the court, counsel for Father then raised an
*(Footnote Continued Next Page)*

- 4 -

Counsel questioned Child, then ten years old.[8]  Additionally, DHS presented the testimony of former Community Umbrella Agency ("CUA") case manager Selvin Belzine, and current CUA case manager Isabel Robles.

By decree dated and entered July 25, 2023, the trial court involuntarily terminated Father's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).  By separate order also dated and entered July 25, 2023, the court also changed the Child's permanency goal from reunification to adoption.

On August 23, 2023, Father, through court-appointed counsel, filed timely notices of appeal, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).  Father's appeals were consolidated by this Court *sua sponte* on September 5, 2023.  The trial court filed a responsive Rule 1925(a) opinion on November 13, 2023.

On appeal, Father raises the following issues for our review:

1. Whether the trial court erred by terminating the parental rights of Father under 23 Pa.C.S.A. § 2511(a)(1)?

---

objection based upon hearsay.  The court noted counsel's objection but found Father's refusal to participate deliberate and of his own volition.  **See id.** at 15-16.

[8] Child was represented by a separate guardian *ad litem* ("GAL") and legal counsel, Susan Rubinovitz, Esquire, and Angelina Dagher, Esquire, respectively.  **See** 23 Pa.C.S.A. § 2313(a).  While both joined DHS's argument in favor of termination and goal change at the conclusion of the subject hearing, **see** N.T., 7/25/23 (Volume 1), at 78, neither submitted briefs to this Court.

2. Whether the trial court erred by terminating the parental rights of Father under 23 Pa.C.S.A. § 2511(a)(2)?

3. Whether the trial court erred by terminating the parental rights of Father under 23 Pa.C.S.A. § 2511(a)(5)?

4. Whether the trial court erred by terminating the parental rights of Father under 23 Pa.C.S.A. § 2511(a)(8)?

5. Whether the trial court erred by terminating the parental rights of Father under 23 Pa.C.S.A. § 2511(b)?

6. Whether the trial court erred by determining it to be in the child's best interest to change the goal from reunification to adoption?

7. Whether it was a violation of Father's due process rights by not granting a continuance because Father was not brought to the goal change and termination of parental rights hearing and he was not available to participate by video so that he could have an opportunity to be heard and participate meaningfully in the hearing?

8. Whether it was error to allow hearsay testimony by a Philadelphia Sheriff Supervisor to testify about why Father was not brought to court and why Father did not participate by video at the goal change and termination of parental rights hearing?

Father's Brief at 5-6 (cleaned up) (suggested answers omitted).[9]

---

[9] We note with disapproval Father's failure to cite to the record in the statement of the case portion of his brief. *See* Pa.R.A.P. 2117(a)(4) (requiring in part, "A closely condensed chronological statement, in narrative form, of all the facts which are necessary to be known in order to determine the points in controversy, with an appropriate reference in each instance to the place in the record where the evidence substantiating the fact relied on may be found.") (internal citation omitted). However, as we are able to discern the general issues raised and related arguments, and as we perceive no prejudice, we proceed with the merits of Father's appeal. *See* Pa.R.A.P. 2101 (stating, "Briefs and reproduced records shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular
*(Footnote Continued Next Page)*

Our standard of review in this context is well-established:

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the orphans' court's findings of fact and credibility determinations if they are supported by the record. Where the orphans' court's factual findings are supported by the evidence, an appellate court may not disturb the orphans' court's ruling unless it has discerned an error of law or abuse of discretion.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, the orphans' court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-30 (Pa. Super. 2022) (cleaned up).

The involuntary termination of parental rights is governed at statute by

Section 2511 of the Adoption Act, which requires a bifurcated analysis. *See*

---

case will admit, otherwise they may be suppressed, and, if the defects are in the brief or reproduced record of the appellant and are substantial, the appeal or other matter may be quashed or dismissed.").

23 Pa.C.S.A. § 2511. The trial court must initially determine whether the conduct of the parent warrants termination under one of the eleven enumerated grounds set forth at Section 2511(a). Only if the court determines that the petitioner has established grounds for termination under Section 2511(a) does it then engage in assessing the petition under Section 2511(b), which focuses upon the child's needs and welfare. *See In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). To involuntarily terminate parental rights, the petitioner must satisfy both Section 2511(a) and (b) by clear and convincing evidence, which is evidence that is so "clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re Adoption of C.M.*, 255 A.3d 343, 359 (Pa. 2021).

In the case *sub judice*, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). To affirm the underlying decrees, however, we need only agree with the court's decision as to any one subsection of Section 2511(a), along with Section 2511(b). **See In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). As such, we limit our discussion to Section 2511(a)(2) and (b),[10] which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

---

[10] This corresponds with Father's second and fifth issues. Given our disposition herein, we need not address Father's first, third, and fourth issues.

. . .

> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . .

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

To prove the applicability of subsection (a)(2), the party petitioning for termination must establish: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot and will not be remedied. *See In re Adoption of A.H.*, 247 A.3d 439, 443 (Pa. Super. 2021). Subsection (a)(2) emphasizes the child's present and future needs, not the parent's refusal to perform their duties and thus "should not be read to compel courts to ignore a child's need for a stable home and strong

continuous parental ties. . . . **This is particularly so where disruption of the family has already occurred and there is no reasonable prospect for reuniting it**." **Z.P.**, 994 A.2d at 1117 (citation omitted) (emphasis in original). Section 2511(a)(2) grounds are not limited to affirmative misconduct; they may also include acts of refusal and incapacity to perform parental duties. **See In re S.C.**, 247 A.3d 1097, 1104 (Pa. Super. 2021), *abrogated on other grounds by* **Interest of K.T.**, 296 A.3d 1085, 1110 n.23 (Pa. 2023). We have long recognized that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. **See In re M.A.B.**, 166 A.3d 434, 443 (Pa. Super. 2017).

In **In re Adoption of S.P.**, 47 A.3d 817 (Pa. 2012), our Supreme Court, in addressing Section 2511(a)(2), concluded,

> incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.

**Id.** at 328-29.

In concluding that DHS established the statutory grounds to terminate Father's parental rights pursuant to Section 2511(a), the trial court stated as follows:

> Child was adjudicated dependent on January 14, 2019. The record and testimony presented at the termination hearing demonstrated Father's ongoing inability to provide care for or control of his child. Father's failure to remedy the conditions that brought Child into care indicate a continuing disregard of his parental duties. Father

- 10 -

> was derelict in achieving his single case plan objectives. Father's drug use and frequent periods of incarceration continued throughout the life of the case. Father appeared unwilling to work with CUA as ordered by the court and his lack of cooperation was to his detriment.

Trial Court Opinion, 11/13/23, at 8.

Father, however, argues that any incapacity can be remedied. He asserts that he participated in parenting and anger management while incarcerated, as well as two-month consistent visitation while not incarcerated. **See** Father's Brief at 18-19. This argument fails.

Upon review, the record supports grounds for termination under Section 2511(a)(2). The record reveals that Father failed to complete his goals aimed at reunification of which he was made aware, and which remained consistent throughout the dependency proceedings. **See** N.T., 7/25/23 (Volume 1), at 25-27, 30, 36-37, 44-45; **see also** DHS Exhibits 3, 4, 5, 6, 7, & 8 (single case plans and letters). As detailed *supra*, the court conducted regular review hearings at which it consistently characterized Father as non-compliant with the permanency plan. **See** DHS Exhibit 2 (dependency orders); **see also** N.T., 7/25/23 (Volume 1), at 57, 61. Further, both Ms. Belzin and Ms. Robles indicated that Father failed to comply with referrals to the CEU for assessment and screening, as well as referrals for services including domestic violence, parenting, anger management, and employment. **See** N.T., 7/25/23 (Volume 1), at 34, 39, 46, 60.

Additionally, Father has an extensive criminal history and was in and out of jail throughout the dependency proceedings. *See id.* at 27-28, 30, 43, 47, 59, 67. As to this impact, Ms. Belzin testified as follows:

[COUNSEL FOR DHS]: And did that have an impact on the case planning?

THE WITNESS: Yes.

[COUNSEL FOR DHS]: His going in and out of jail?

THE WITNESS: Yes.

[COUNSEL FOR DHS]: What type of impact did it have?

THE WITNESS: Case manager was not able to maintain regular contact with [F]ather. Father wasn't able to go to submit the randoms. He wasn't able to do the dual diagnosis or the drug and alcohol.

*Id.* at 28 (internal quotation marks omitted).

Moreover, at the time of the subject hearing, Father was incarcerated. *See id.* at 7, 10. Based upon the bring down requests in the certified record, it appears that he had been incarcerated since at least September 2022. The nature of the specific charges and length of sentence are not clear from the certified record. It is thus entirely speculative when and if Father will be in a position to care for Child. This prospect is simply unacceptable for Child, who, at the time of the hearing, had already been in care for over four years.

Hence, we discern no abuse of discretion by the trial court in concluding that termination pursuant to Section 2511(a)(2) is warranted. The record substantiates the conclusion that Father's repeated and continued incapacity,

neglect, or refusal has caused Child to be without essential parental control or subsistence necessary for her physical and mental well-being. ***See A.H.***, 247 A.3d at 443. Moreover, Father cannot or will not remedy this situation. ***See id.*** Father's failure to comply with his objectives in furtherance of reunification has caused Child to be without essential parental control or subsistence necessary for their physical and mental well-being. Further, that he has done so for over four years belies any suggestion of future compliance and progress. As this Court has stated, "[A] child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." ***In re Adoption of R.J.S.***, 901 A.2d 502, 513 (Pa. Super. 2006).

Having found sufficient grounds for termination pursuant to Section 2511(a)(2), we next must determine whether termination was proper under Section 2511(b), which affords "primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). "[T]he determination of the child's 'needs and welfare' requires consideration of the emotional bonds between the parent and child. The 'utmost attention' should be paid to discerning the effect on the child of permanently severing the parental bond." ***See T.S.M.***, 71 A.3d at 267

(internal citations omitted). As our Supreme Court recently explained in *Interest of K.T.*, 296 A.3d 1085, 1113 (Pa. 2023):

> [A] court conducting a Section 2511(b) analysis m**ust consider more than proof of an adverse or detrimental impact** from severance of the parental bond. We emphasize analysis of the parental bond is but one part of the overall subsection (b) analysis, which includes a determination of whether the bond is necessary and beneficial to the child, *i.e.*, whether maintaining the bond serves the child's developmental, physical, and emotional needs and welfare.

*K.T., supra* (emphasis added).

The evaluation of a child's respective bonds is not always an easy task. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa. Super. 2008) (citation omitted).

In addition, the *K.T.* Court held that the "Section 2511(b) inquiry must also include consideration of other important factors." *Id.* While not inventing an exhaustive list of considerations, the Court explained that the inquiry **must consider and weigh** certain evidence **if it is present in the record**, including, but not limited, "the child's need for permanency and the length of time in foster care [. . .]; whether the child is in a pre[-]adoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of

- 14 -

love, comfort, security, safety, and stability." *Id.* (footnote omitted); *see also id.* at n.28 (emphasis in original).

Preliminarily, Father baldly asserts that the evidence is insufficient to terminate his parental rights under Section 2511(b). He requests therapy sessions with Child to re-establish a bond with her. *See* Father's Brief at 21-22. As such, we conclude that any assertion of error as to Section 2511(b) is waived for failure to address this issue in a meaningful way or develop it a meaningful fashion with citation to pertinent legal authority and/or reference to the record. *See* Pa.R.A.P. 2119(a)-(d); *see also In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011) (quoting *In re A.C.*, 991 A.2d 884, 897 (Pa. Super. 2010)) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."); *see also In re M.Z.T.M.W.*, 163 A.3d 462, 465-466 (Pa. Super. 2017) (citation omitted) (reiterating that a claim is waived where an appellate brief fails to provide any discussion of the claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review).

Even if not waived, we would deem Father's claim to be without merit. Instantly, in determining that termination was additionally proper under Section 2511(b), the trial court found that Child shared a parent-child bond with her foster mother. The court stated as follows:

> The trial court noted that Child is placed in foster care with a supportive caregiver. The trial court found that the testimony and

evidence indicated that Child and her caregiver share a parental bond, and the caregiver is providing for Child's daily emotional and physical needs. In contrast, the trial court found that Father lacked the capacity to address Child's basic emotional and physical needs.

Trial Court Opinion, 11/13/23, at 8-9 (cleaned up); *see also id.* at 12 ("It was clear to the trial court from the testimony that a parent/child bond existed between the Child and her current caregiver."). In support of its conclusions, the court continued:

Ms. Robles testified that Child does not want to see or hear from Father and noted that Child refused to engage in a virtual visit with Father because he disparages her deceased mother whenever they speak. Ms. Robles informed the court that Child wishes to remain with her current caregiver. Ms. Robles testified that Child is bonded to her current caregiver and refers to her as ["Auntie."] Ms. Robles does not believe that terminating Father's parental rights would irreparably harm Child. Ms. Robles testified that it is in Child's best interest for Father's parental rights to be terminated so that Child would be free for adoption with her current caregiver as Child looks to the caregiver for her daily needs. Ms. Robles described a loving relationship between Child and her current caregiver. She stated that they are very well bonded and that Child feels safe and secure in the caregiver's home.

Child also testified about her relationship with Father and her feelings toward her current caregiver. Child testified that she does not have a relationship with her father, and she does not want to live with him. She added that he has never taken care of her, never taken her anywhere, and never given her a gift. She testified that she does not want to be around Father and that Father feels like a stranger to her. She told the court that her father is nothing to her and that she wishes to have no future contact with him and wants to continue living with her current caregiver.

Ms. Robles testified that Father has not completed any of his SCP objectives throughout the course of this case despite being ordered to do so by the court on numerous occasions. She added

- 16 -

that Father has been in and out of jail throughout this case and, with the exception of the two months of supervised visits,[11] has made no effort whatsoever toward reunification.

*Id.* at 11-12 (cleaned up) (citations to record omitted).

On cross-examination by Child's GAL, Ms. Robles testified as follows:

[CHILD'S GAL]: Who meets [Child's] daily needs?

THE WITNESS: The caregiver.

[CHILD'S GAL]: Who do[es she] look to when [she is] sad or sick?

THE WITNESS: The caregiver.

[CHILD'S GAL]: Who do[es she] look to as [her] parental – who do[es she] have [a] parental relationship with?

THE WITNESS: The caregiver.

[CHILD'S GAL]: Do[es she] have any sort of parental relationship with [her father]?

THE WITNESS: No.

[CHILD'S GAL]: What is [Child's] demeanor when you mention her father?

THE WITNESS: She gets very upset.  She gets angry.  She gets triggered . . . .  Like she holds her fist, and she gets angry, and she just shuts down.

[CHILD'S GAL]: So the near mention of him is very upsetting?

THE WITNESS: Very.

---

[11] Ms. Robles testified that Father engaged in supervised visitation for a period of two months from March through May 2021.  She explained that a single visit was "cut short" as he "appeared under the influence."  Thereafter, Father stopped attending visits and Ms. Robles eventually learned that Father was incarcerated again.  N.T., 7/25/23 (Volume 1), at 46-49, 67.

- 17 -

[CHILD'S GAL]: Would it cause . . . any irreparable harm if . . . biological father[']s and any unknown father[']s parental rights were terminated?

THE WITNESS: No.

N.T., 7/25/23 (Volume 1), at 62-63. Describing Child and A.R.'s relationship with their foster mother, Ms. Robles further observed, "And then being with [their foster mother] they're just so – they love her. They are so well bonded and everything as you know they know that she's going to take care of them." *Id.* at 64.

This was confirmed by Child's legal counsel, who also reported that Child was doing well and wanted to remain in her current foster home. *See id.* at 70-72. Child's counsel stated, "Your Honor, as a result of my interaction with [C]hild, observing [C]hild for over an hour in the home, her comfort level, I will submit that [C]hild is well adjusted and is being loved and cared for. And it's obvious that [her foster mother] cares for [her]." *Id.* at 72.

As the trial court's findings pursuant to Section 2511(b) are supported by the certified record, and free from legal error, we will not disturb them. Father and Child do not share a necessary and beneficial relationship pursuant to Section 2511(b). *See K.T.*, 296 A.3d at 1113. Indeed, the record reveals no parent-child bond exists between Father and Child. Rather, Child shared a parent-child bond and beneficial relationship with her foster family, where she desires to remain.

Given our disposition concerning termination, Father's challenge of the goal change order, reflected by his sixth issue, is moot.[12] *See Interest of A.M.*, 256 A.3d 1263, 1272-1273 (Pa. Super. 2021) (finding issues regarding goal change moot in light of termination of parental rights); *A.H.*, 247 A.3d at 446 ("[T]he effect of our decision to affirm the orphans' court's termination decree necessarily renders moot the dependency court's decision to change Child's goal to adoption").

Lastly, we will address Father's seventh and eight issues together, as they are interrelated. Specifically, Father asserts that the trial court violated his guarantee of due process under the 14th Amendment of the United States Constitution for failure to grant a continuance as he was not able to meaningfully participate in the subject proceeding. *See* Father's Brief at 23-24. He further argues that the trial court erred in its consideration of hearsay testimony with respect to this determination. *See id.* at 24-25. Father's claims are without merit.

It is well-settled that infringement on parental rights implicates a natural parent's 14th Amendment right to due process. *See Interest of A.P.*, 692 A.2d 240, 242 (Pa. Super. 1997) (stating that natural parents have a "fundamental liberty interest . . . in the care, custody, and management of

---

[12] Even if not moot, for the reasons we have already discussed throughout this memorandum with respect to termination, the record confirms that changing Child's permanency goal to adoption is in her best interest. *See In re A.B.*, 19 A.3d 1084, 1088-1089 (Pa. Super. 2011).

their children") (citing **Santosky v. Kramer**, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982)).  "It has long been established that the right to make decisions concerning the care, custody, and control of one's children is one of the oldest fundamental rights protected by the Due Process Clause of the United States Constitution."  **In re S.H.**, 71 A.3d 973, 979–80 (Pa. Super. 2013) (citing **Hiller v. Fausey**, 904 A.2d 875, 885 (Pa. 2006), *cert. denied,* 549 U.S. 1304, 127 S.Ct. 1876, 167 L.Ed.2d 363 (2007).  "Due process requires nothing more than adequate notice, an opportunity to be heard, and the chance to defend oneself in an impartial tribunal having jurisdiction over the matter."  **In re J.N.F.**, 887 A.2d 775, 781 (Pa. Super. 2005).  "Due process is flexible and calls for such procedural protections as the situation demands."  **In re Adoption of Dale A., II**, 683 A.2d 297, 300 (Pa. Super. 1996) (citing **Mathews v. Eldridge**, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976)).

As the record is devoid of any request for and denial of a continuance, any such claims would be waived for failure to raise them before the trial court.  **See** Pa.R.A.P. 302(a) (providing for waiver of issues not first raised in lower court); **see also Interest of T.M.**, 239 A.3d 193, 201 (Pa. Super. 2020) ("[O]ur Supreme Court has frequently stressed the necessity of raising claims at the earliest opportunity to eliminate the possibility that an appellate court will be required to expend time and energy reviewing claims on which no trial

[court] ruling has been made.") (citation and internal quotation marks omitted) (emphasis omitted).

Moreover, the trial court concluded that "Father's absence was a result of his own doing." Trial Court Opinion, 11/13/23, at 10. As the court explained at the time of the subject hearing:

> The [c]ourt finds that [Father]'s reluctance to participate in this hearing is his own doing. . . . And of his own volition. . . . I find that [Father] has deliberately refused to participate. Given opportunities to come down on April 13th as well as July 25th. And as well as the ability to participate video, by video conference today. So I find that [Father]'s refusal is his own doing. . . .

N.T., 7/25/23 (Volume 1), at 15-16. Indeed, Father was appropriately served and for at least the second time refused to attend and/or participate. **_See_** DHS Exhibit 9 (service documents); N.T., 7/25/23 (Volume 1), at 7-8, 11-14. Notwithstanding, Father was represented by counsel who represented his interests throughout the proceeding. Any claims challenging due process thus fail.

Based on the foregoing, we affirm the decree involuntarily terminating Father's parental rights and dismiss the appeal of the goal change order as moot.

Decree affirmed. Appeal from goal change order dismissed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>4/29/2024</u>